**Barry K. BENNETT, Plaintiff,**

v.

**Jack DUCKWORTH, Individually and in his official capacity as Warden of the Indiana State Prison; and Larry Worthington, Individually and in his official capacity as an Officer of the Department of Correction holding the rank of Lieutenant, Defendants.**

**No. H 82–403.**

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 6, 1984.

Barry K. Bennett, pro se.

Linley E. Pearson, Atty. Gen. of Indiana, Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN·SHARP, Chief Judge.

This action was filed pursuant to 42 U.S.C. § 1983 by two former inmates at the Indiana State Prison in Michigan City, Indiana, against various state correction officials. It is presently before this court for a final ruling after a bench trial. Pursuant to F.R.Civ.P. 52(a), this memorandum of decision and order constitutes this court's findings of fact and conclusions of law.

Before proceeding to an examination of the merits of plaintiff's case, a brief history of this matter is in order.

This action was originally filed in the Indianapolis Division of the United States District Court for the Southern District of Indiana on December 5, 1980. Because it was subsequently determined that the defendants resided in this district, and the act complained of occurred at the Indiana State Prison (which is also in this district), this case was ordered transferred under 28 U.S.C. § 1404(a) to the Hammond Division of this district on June 1, 1982. Thereafter, on November 24, 1982, this matter was ordered transferred from the Hammond Division to the South Bend Division as the seat of proper venue.

On April 22, 1983, this court entered a decision by Memorandum and Order, granting in part and denying in part defendants' previously filed motion for summary judgment. *See Risner v. Duckworth*, 562 F.Supp. 378 (N.D.Ind.1983). That same day, this court set this action down for a pretrial conference for May 27, 1983.

At the pretrial conference on May 27, 1983, neither plaintiff appeared. However, there being a question concerning whether the complainants were properly notified of said hearing, a second pretrial conference was scheduled for July 8, 1983.

At the hearing held on July 8, 1983, only plaintiff Bennett appeared for the complainants. Plaintiff Risner was thereupon ordered dismissed for failure to prosecute, F.R.Civ.P. 41(b), and a bench trial was set for December 28, 1983.

On December 28, 1983, this matter came on for trial at the Indiana State Prison in Michigan City, Indiana. At the conclusion of the trial, both sides were given until January 9, 1984, in which to file any supplemental authority in support of their respective positions. Neither side having done so, this case is now ripe for ruling.[1]

In this court's prior decision by Memorandum and Order, noted above, summary judgment was denied as to the question whether the defendants' acts or omissions created an atmosphere of pervasive, patterned violence so severe that the very living conditions at the Prison constituted a violation of the plaintiff's Eighth Amendment right to be free from cruel and

---

**1.** At the outset, it should be noted that plaintiff has made no request, either for appointed counsel under 28 U.S.C. § 1915(d) or for a jury trial under F.R.Civ.P. 38(b), 39.

unusual punishment. This was to have been the sole question to be tried.

However, at trial the plaintiff chose to forego any arguments concerning a "pervasive atmosphere of violence" at the Prison, and instead chose to proceed exclusively on a theory of negligence, i.e., whether the injuries sustained by the plaintiff were the direct and proximate results of the defendants' negligence.

On December 12, 1978, the plaintiff and his brother[2] were assaulted in a Prison "yard" by three inmates armed with iron pipes and at least one knife. At the time of the attack, no correctional officer was in the immediate vicinity. The plaintiff and his brother sustained injuries severe enough to warrant hospital treatment; a third inmate who had attempted to intervene and break up the fight was slightly injured, but did not require hospitalization.

At the opening of trial, and without objection, the depositions of Larry Risner and Barry Bennett were ordered published.

For his case in chief, plaintiff called two witnesses to the stand, viz., his brother, Larry Risner, and Arthur McBride, the third victim of the December 12, 1978 assault. Plaintiff himself also took the stand as a witness.

At the close of plaintiff's case in chief, defendants orally moved to dismiss defendants Hunt, Shuler and Faulkner under F.R. Civ.P. 41(b) on the grounds that plaintiff had neither alleged nor proven any personal connection between those named defendants and the incident complained of. Plaintiff made no objection to the motion, i.e., plaintiff expressly agreed that defendants Hunt, Shuler and Faulkner should be dismissed. The motion was granted.

Defendants also moved to dismiss the remaining two defendants, Duckworth and Worthington, as part of a general motion for directed verdict under F.R.Civ.P. 50(a).[3] Plaintiff objected thereto, and the motion was denied.

Defendants called three witnesses to the stand: both the named remaining defendants, Duckworth and Worthington, as well as Charles Penfold, former investigative officer at the Prison. In addition, defendants proffered four exhibits, three of which were admitted into evidence without objection, the fourth of which was objected to and not admitted.

The uncontroverted facts adduced at trial are as follows.

None of the plaintiff's witnesses, including the plaintiff, admitted to knowing any of their assailants prior to the attack of December 12, 1978. Neither the plaintiff nor his witnesses had ever warned the defendants in advance of any threatened assaults. Arthur McBride specifically testified under questioning from the court that inmate assaults on other inmates are *not* commonplace, at the Prison, and that severe assaults, e.g., stabbings, are rare.

Charles Penfold's testimony supported that of inmate McBride. Mr. Penfold testified that only twenty-eight assaults of all types (i.e., armed or unarmed) involving inmates attacking fellow inmates were reported and investigated during the 1978 calendar year.[4] Of these, most did not involve weapons and few resulted in injury.

Defendant Duckworth testified, and plaintiff did not dispute, that serious assaults, i.e., those resulting in some form of physical injury, are unusual at the Prison, occurring at the rate of fewer than one per month.

Plaintiff sought to make a case for negligence on the grounds that the "yard" correctional officer, Lieutenant Worthington,

---

**2.** Larry Risner, plaintiff's former co-plaintiff.

**3.** Actually, defendants termed their oral motion as one for a judgment on the pleadings under F.R.Civ.P. 12(c). While not strictly improper, such motions are ordinarily made in writing in advance of trial. C. Wright, *Law of Federal Courts* 433 (4th ed. 1983).

**4.** These twenty-eight documented and investigated assaults do not represent all assaults occurring at the Prison that year, i.e., where an assault is witnessed by a Prison staff member and disposed of by a conduct report or a simple Conduct Adjustment Board (CAB) hearing, no investigation is involved.

was improperly away from his post-station at the time of the attack. However, plaintiff's own witness McBride testified on cross-examination that it is the obligation of each station's correctional officer to patrol the grounds under his supervision regularly, particularly at meal times. Officer Worthington testified to the same effect on both direct and cross-examination, explaining that at meal times, station-officers must, as part of their inspection rounds, assist in the supervision of the feeding of the inmates.

A careful examination of the pleadings, depositions, exhibits, and testimony of the witnesses reveals a surprising lack of any substantial disagreement between the two sides. Plaintiff all but conceded that defendant Worthington was not improperly or negligently away from his post at the time of the assault. Defendant Worthington was, as part of the duty of making his daily rounds, assisting at the Prison dining hall in the supervision of the feeding of the inmates at the time of the attacks.

Superintendent Duckworth was admittedly not informed in advance of the possibility of any attack on the plaintiff. Indeed, Superintendent Duckworth testified that, prior to the assault of December 12, 1978, he did not even know the plaintiff or plaintiff's brother.

Plaintiff did a credible job of acting as his own counsel. He understood the basics of questioning and cross-examining witnesses, and successfully objected to some of the testimonial and documentary evidence proffered by the defendants.

Even so, plaintiff disputed very little of what defendants said, and offered virtually no evidence to support his contention that the named defendants were somehow negligent and that this negligence resulted in his injuries. Thus, the evidence produced at trial leads inexorably to the conclusion that the assault complained of, while unfortunate, was nevertheless an unforeseen and isolated incident.

As this court noted in its previous Memorandum and Order, to state a claim under the Eighth Amendment, the complainant must show that there exist conditions that "involve the unnecessary or wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

> The Seventh Circuit has described this standard as one of whether prison officials intentionally inflicted excessive or grossly severe punishment on a prisoner or knowingly maintained conditions so harsh as to shock the general conscience. *Stringer v. Rowe*, 616 F.2d 993, 1000–1001 (7th Cir.1980); *United States ex rel. Miller v. Twomey*, 479 F.2d 701, 719–20 (7th Cir.1973), *cert. den. sub nom., Gutierrez v. Dept. of Public Safety*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974); see also, *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982).
>
> "Wanton" infliction of pain or intentional or knowing conduct requires a level of culpability greater than mere negligence. Thus, the Seventh Circuit has held that isolated acts of violence do not constitute cruel and unusual punishment, without an inquiry as to whether or not those isolated acts resulted from negligence or even from some greater culpability. *Madyun v. Thompson*, 657 F.2d 868, 875 (7th Cir.1981).

*Risner v. Duckworth*, 562 F.Supp. at 380–81. *See also, generally, Wellman v. Faulkner*, 715 F.2d 269 (7th Cir.1983).

█ Even granting plaintiff every indulgence due a *pro se* litigant under the progeny of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), it is clear that no claim for negligence was stated or shown against either defendant Duckworth or defendant Worthington. Thus, and even under the narrowest construction of the "personal involvement" requirement of *Duncan v. Duckworth*, 644 F.2d 653 (7th Cir.1981), there was no showing of negligence on the part of the above named defendants.

█ As for plaintiff's contention that the defendant Duckworth is liable for allegedly permitting an unconstitutional level of violence to exist at the Prison, again there

**1384**

was no evidence adduced at trial to support such a claim.

At 381 of *Risner v. Duckworth, supra,* this court noted that isolated acts of violence, without more, do not rise to the level of an Eighth Amendment claim. *Jones v. Diamond,* 636 F.2d 1364, 1373 (5th Cir.), *cert. dismissed sub nom. Ledbetter v. Jones,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981) ("a prisoner has a right to be protected from the *constant* threat of violence ...").

Research by this court has disclosed only three appellate decisions construing *Jones v. Diamond* on the specific question of the degree of institutional violence necessary to state a claim cognizable under the Eighth Amendment. These decisions consistently state that isolated acts of violence are insufficient to state an Eighth Amendment claim. *Stokes v. Delcambre,* 710 F.2d 1120, 1124 (5th Cir.1983) ("where terror reigns"); *Gullatte v. Potts,* 654 F.2d 1007, 1012 (5th Cir.1981) (officials must be aware of a danger to an inmate's health and safety, then fail to act, to state an Eighth Amendment claim); *Murphy v. United States,* 653 F.2d 637, 644–45 (D.C. Cir.1981) ("terror reigns" or a "risk of assault [is]'a serious problem of substantial dimensions.").

As the Court of Appeals for the District of Columbia Circuit noted in *Murphy, supra,* "a prisoner has no right to demand the level of protection necessary to render an institution assault-free". *Id.* at 644.

At trial it was shown that the Indiana State Prison's population was approximately 2,000 inmates at the time of the assault on plaintiff. These 2,000 inmates represent the most hardened criminals in the State of Indiana, in light of the fact that the Indiana State Prison is the State's sole maximum security facility. Notwithstanding that fact, the number of serious assaults occurring at the Prison numbered less than an average of one per month, a figure that must be deemed remarkably low for such an institution. Under these facts, coupled with those set forth above, this court must conclude that the assault

on the plaintiff was an unfortunate but otherwise unforeseen and isolated incident.

Accordingly, it is now the ORDER of this court that plaintiff take nothing by his complaint, and that JUDGMENT be entered in favor of the defendants. Each party to bear own costs.