762 F.2d 654
 George THOMAS, Appellee,
v.
Thomas BOOKER, Alfonso Lark and Major C.O. Humphrey, Appellants.
George THOMAS, Appellant,
v.
Thomas BOOKER, Alfonso Lark and Major C.O. Humphrey, Appellees.
George THOMAS, Appellee,
v.
Thomas BOOKER, Alphonso Lark and William Frank Humphrey, Appellants.
 Nos. 83-2540, 83-2541 and 83-2573.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 11, 1984.
Decided May 16, 1985.
Rehearing En Banc Granted Aug. 7, 1985.
 
 Robert Dierker, St. Louis, Mo., for appellants.
 Gerald L. Birnbaum, O'Fallon, Mo., for appellee.
 Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 George Thomas sued St. Louis City Jail officials Thomas Booker, Alphonso Lark, and William Humphrey under 42 U.S.C. Sec. 1983, alleging that while he was a pretrial detainee at the jail, his constitutional right to be adequately protected from physical assaults by other inmates was violated.
 
 I. Facts
 
 2
 In May 1980, Thomas was transferred to the St. Louis City Jail from the city workhouse to await trial on state charges. Initially, Thomas was assigned to a one-man cell in the administrative segregation section of the jail. He subsequently was assigned to a general population section of the jail. In July 1980, after a homemade knife was found in Thomas's cell, Thomas was placed in disciplinary segregation for ten days. Upon release from disciplinary segregation, Thomas was assigned to a four-man cell in a general population section of the jail.
 
 
 3
 On September 17, 1980, as inmates were being locked into their cells for the night, inmate Gregory Swink rushed into Thomas's cell, struck Thomas in the right eye, and ran to his nearby cell. Thomas immediately was taken to the city hospital for treatment of injury to his eye. Thomas was returned to the same four-man cell in the jail on September 18, 1980.
 
 
 4
 On the morning of September 22, 1980, a number of inmates, including Thomas and his cellmates, were in a dayroom located on the same floor of the jail as their cells. A fight ensued between Thomas and cellmate Gillian. Sometime after the fight had ended, defendant Humphrey entered the dayroom. Observing facial injuries to both Thomas and Gillian, Humphrey removed the two inmates from the dayroom and took them to the jail nurse's office for treatment. On September 23, 1980, Thomas was taken to the hospital and was treated for injuries he apparently sustained in the September 22 fight--a broken hand and additional injury to his right eye.
 
 
 5
 By consent of the parties, the jury trial in this case was held before a magistrate in accordance with 28 U.S.C. Sec. 636(c).[1] The jury initially returned to the courtroom after its deliberations having awarded Thomas $5,000 actual damages and $25,000 punitive damages on a verdict form designating defendant Booker and having left blank the two verdict forms designating defendants Lark and Humphrey. The following exchange then took place:
 
 
 6
 (Discussion was had off the record.)
 
 
 7
 THE COURT: I can only say this, Miss MacMillan, and I'll speak to you as the foreperson of the jury, it's incomplete.
 
 
 8
 THE FOREPERSON: You're right, we're just realizing that sitting here. I'm sorry.
 
 
 9
 THE COURT: You want to take it back and finish it for me?
 
 
 10
 THE FOREPERSON: Yes, I sure will.
 
 
 11
 Trial Transcript at 80-81.
 
 
 12
 The jury retired and returned some eight minutes later having completed all three verdict forms. Thomas again was awarded $5,000 actual damages but the actual damage award had been apportioned by the jury among all three defendants--$3,000 against Booker, $1,000 against Lark, and $1,000 against Humphrey. Likewise, Thomas again was awarded $25,000 punitive damages--$10,000 against Booker, $5,000 against Lark, and $10,000 against Humphrey.
 
 
 13
 Defendants moved the trial court for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court (1) upheld the actual and punitive damage awards against Booker, as well as the actual damage awards against Lark and Humphrey; (2) set aside the punitive damage awards against Lark and Humphrey; and (3) refused to grant a new trial. Defendants appealed arguing that the trial court either should have granted their motion for judgment notwithstanding the verdict in its entirety or ordered a new trial. Defendants also challenge the trial court's award of attorney's fees to Thomas. Thomas cross-appealed arguing that the trial court's partial grant of defendants' motion for judgment notwithstanding the verdict was erroneous.II. Substantive Liability
 
 
 14
 "[P]rison officials may be liable where they are 'deliberately indifferent to [a prisoner's] constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates.' " Martin v. White, 742 F.2d 469, 474 (8th Cir.1984) (quoting Branchcomb v. Brewer, 669 F.2d 1297, 1298 (8th Cir.1982)). And "a jury may be permitted to assess punitive damages in an action under Sec. 1983 when the defendant's conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).
 
 
 15
 The "reckless disregard" and "reckless or callous indifference" portions of these standards are applicable to this case. Defendants argue that the instructions given by trial court failed to state correctly the proper legal standards and that even if the jury was correctly instructed, the evidence is insufficient to support verdicts against them.
 
 A. Instruction No. 7
 The trial court instructed the jury that:
 
 16
 Your verdict must be for Plaintiff if you believe:
 
 
 17
 FIRST: Defendants knew or should have known that placing inmates in the general population and not providing close supervision made it highly foreseeable that some inmates, and in particular the Plaintiff George Thomas, would be physically attacked and seriously injured, and
 
 
 18
 SECOND: Defendants' conduct was grossly negligent or an egregious failure to protect the plaintiff George Thomas, and
 
 
 19
 THIRD: Such acts of defendants were done under the color of law of the State of Missouri, and
 
 
 20
 FOURTH: Such acts violated Plaintiff's Constitutional right to be free from cruel and unusual punishment.
 
 
 21
 FIFTH: As a direct result of such conduct, the plaintiff suffered injury.
 
 
 22
 Gross negligence as used in this instruction means a callous indifference or thoughtless disregard for the consequences of one's acts or failure to act.
 
 
 23
 Egregious failure to protect means a flagrant or remarkably bad failure to protect.
 
 
 24
 Instruction No. 7, Appendix at 105. Before discussing defendants' challenge to Instruction No. 7, we feel obliged to share some observations of our own regarding that instruction.
 
 
 25
 Instruction No. 7 is virtually identical to an instruction previously found by this Court to be not prejudicially erroneous.[2] See Wade v. Haynes, 663 F.2d 778, 782 (8th Cir.1981), aff'd on other grounds sub nom. Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Subsequent to Wade v. Haynes, the Court determined that a defendant's conduct in cases such as the instant case should be evaluated in terms of "reckless disregard." See supra. Yet the precise term "reckless disregard" does not appear in Instruction No. 7. While the trial court might artfully have updated the language of its instruction to reflect the relevant statements of law made by this Court, we find that the failure to do so was, at worst, harmless error. By including in Instruction No. 7 the words "gross negligence," defined as "a callous indifference or thoughtless disregard," and "egregious failure to protect," defined as "a flagrant or remarkably bad failure to protect," the trial court sufficiently indicated to the jury the nature of conduct for which defendants could be held liable.
 
 
 26
 Another error in Instruction No. 7 is not, however, so easily excused. The constitutional rights of a prisoner who has been convicted of a crime are protected by the Eighth Amendment prohibition against cruel and unusual punishment. A pretrial detainee's constitutional rights are secured by the Fourteenth Amendment and "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Putman v. Gerloff, 639 F.2d 415, 419 (8th Cir.1981) (emphasis added) (citing Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979)). Thus, a reference to cruel and unusual punishment in paragraph four of Instruction No. 7 subjected Thomas to an erroneous burden of proof. See id. at 418. Had Thomas not prevailed before the jury, the trial court's requirement of a finding that defendants' acts violated Thomas's right to be free from cruel and unusual punishment would have been grounds for reversal.
 
 
 27
 Defendants challenge the first paragraph of Instruction No. 7 which conditioned defendants' liability on a finding by the jury that defendants knew or should have known that placing Thomas in the jail's general population without close supervision made an attack upon him highly foreseeable. Defendants argue that this portion of Instruction No. 7 was inadequate and that a proper instruction would preclude liability unless defendants "knew or should have known of a specific, clear and present danger to the safety of [Thomas], a danger manifested by evidence of objective facts and circumstances which should have led [them], in the exercise of professional judgment, to act in certain ways." Brief of Appellants at 31. Defendants do not cite any authority in support of such an instruction. Moreover, we are not convinced that defendants' proposal correctly states the controlling law in a manner that would aid the jury.
 
 B. Sufficiency of the Evidence
 1. Defendants Booker and Lark
 
 28
 During the period relevant to this case, defendant Booker was the chief of security at the jail. Defendant Lark was the ranking supervisor of correctional officers. The chain of command included Booker, Lark, a supervisory correctional officer on each floor of the jail, and various subordinate correctional officers on each of the floors. The crux of Thomas's claims against Booker and Lark is that he asked them to be placed in administrative segregation because he feared being attacked by other inmates, that they ignored these requests, and that he subsequently suffered injurious attacks. See Brief of Appellee/Cross-Appellant at 17. Booker and Lark argue that the evidence is insufficient to support a finding that they acted in reckless disregard of Thomas's rights and that the verdicts against them therefore must be reversed.
 
 
 29
 With respect to Booker, the record includes testimony by Thomas (1) that in May 1980, he asked Booker not to remove him from administrative segregation (where he initially had been placed upon his transfer to the jail from the city workhouse) because he feared other inmates might attack him; (2) that in July 1980, following the discovery in Thomas's cell of a homemade knife, he told the investigating committee of which Booker was a member that he felt he needed the weapon for protection; (3) that while he was in disciplinary segregation as punishment for the homemade knife incident, he told Booker that he feared for his physical safety if he was returned to the general population; (4) that the day after his return to the jail from the hospital where he had been treated for injuries suffered in the September 17, 1980 attack by Swink, he again expressed his fear of attack by other inmates and asked Booker to remove him from the general population. Thomas also testified that, following the September 17, 1980 attack by Swink but preceding his September 22, 1980 fight with Gillian, he specifically asked Booker to move him away from cellmate Parker. The record can be read to indicate that it was Parker who instigated the fight between Thomas and Gillian. Additionally, other inmates testified that they heard Thomas ask Booker to remove him from the general population. Parker testified that he told Booker if Booker didn't move Thomas, Thomas was going to be "chased" off the floor. Finally, there is every indication in the record that although classification of inmates for cell assignment purposes generally was handled by a social services office and not by Booker,[3] Booker had complete authority to move a prisoner for security reasons.
 
 
 30
 The sufficiency of the evidence supporting a verdict against Booker is a very close question. We doubt that the evidence which relates to events up to and including the September 17, 1980 attack by Swink would be sufficient, without more, to support such a verdict. But Thomas continued to express his fear of attack by other inmates even after Swink had been removed from the jail, and he did so with some degree of particularity; he identified Parker, who claims to have made threats against Thomas to Booker and who appears to have been in some way responsible for the September 22, 1980 fight between Thomas and Gillian, as an inmate he feared. Thus, when all of the evidence is viewed in the light most favorable to sustaining the jury's verdict and when Thomas is given the benefit of every reasonable inference which may be drawn from the evidence, Bauer v. Norris, 713 F.2d 408 (8th Cir.1983), we are unable to say as a matter of law that the jury, having assessed the credibility of the witnesses and having resolved factual conflicts in the evidence, could not properly conclude that Booker acted in reckless disregard of Thomas's right to be free from violent attack by other inmates.
 
 
 31
 With respect to Lark, Thomas's testimony establishes that he only spoke with Lark about his fear of attack by other inmates in the jail's general population on one occasion, and then only in a very generalized fashion. Lark told him that he should discuss his concerns with Booker, who was in charge of security. This conversation took place before Thomas ever was assigned to a general population cell; at the time, Thomas was in administrative segregation following his transfer to the jail from the city workhouse. There is nothing in the record to indicate that Lark knew of Thomas's subsequent complaints to Booker, of the September 17, 1980 attack by Swink, or of Parker's threats against Thomas.
 
 
 32
 Unlike the evidence pertaining to Booker, the evidence pertaining to Lark does not present a close question of sufficiency. This evidence cannot be viewed as a sufficient basis for concluding that Lark acted in reckless disregard of Thomas's right to be free from violent attack by other inmates. We therefore hold as a matter of law that the verdict against Lark lacks adequate evidentiary support.
 
 2. Defendant Humphrey
 
 33
 During the period relevant to this case, defendant Humphrey was a correctional officer at the jail. Humphrey's duties included making regular rounds of assigned areas in the jail. Thomas's claims against Humphrey are based on a different theory than his claims against Booker and Lark; Thomas alleges that Humphrey failed to make his scheduled rounds, that the September 22, 1980 fight with Gillian therefore went undetected, and that, as a result, he suffered physical injury. See Brief of Appellee/Cross-Appellant at 17. Humphrey disputes Thomas's allegations concerning his failure to make rounds and argues that even if the evidence could be viewed as proof that he failed to make rounds, it does not support a finding that he acted in reckless disregard of Thomas's right to be free from violent attacks by other inmates.
 
 
 34
 There is no dispute that Humphrey was on duty when the September 22, 1980 fight between Thomas and Gillian occurred and that the fight took place in an area of the jail to which Humphrey was assigned. It seems equally clear that guards were to make full rounds every fifteen to twenty minutes. However, little else about that fight or Humphrey's role regarding it is clear from the record. Thomas and other inmates estimated that the fight lasted anywhere from forty-five minutes to two hours and that during that time, no guard came by on rounds. Prison officials testified that it would be impossible for a fight to have gone undetected for such a long time. There was testimony by inmates that a great deal of noise was made during the fight. Prison officials testified that the amount of noise claimed by the inmates to have been generated by this fight surely would have attracted the attention of the guards. Thomas cites as proof of Humphrey's failure to make rounds a jail record which indicates that Humphrey left his assigned floor during his September 22, 1980 duty shift for approximately twenty-five minutes. But the jail record suggests that Humphrey did so in order to fulfill another duty function. Furthermore, Humphrey testified that even if he did leave the floor, his rounds would have been made by his supervisor.
 
 
 35
 We decline at this juncture to determine whether or not, as a matter of law, this evidence is sufficient to support a verdict against Humphrey. We express no opinion as to whether Humphrey in fact failed make scheduled rounds or as to whether such failure, if it occurred, amounted to a reckless disregard of Thomas's right to be free from violent attacks by other inmates. Instead, we base our holding as to Thomas's claims against Humphrey on other grounds. See infra IV.
 
 III. The Award of Punitive Damages
 
 36
 Defendants argue that it was improper to submit to the jury the issue of punitive damages. We will address this contention in the context of the damages awarded against Booker because Booker is the sole defendant against whom a judgment awarding punitive damages was entered.
 
 
 37
 Once the jury determined that Booker had acted in reckless disregard of Thomas's rights, it was required to award Thomas damages to compensate him for his loss.[4] See Smith v. Wade, 461 U.S. at 52, 103 S.Ct. at 1638. Additionally, because the reckless or callous indifference threshold for awarding punitive damages applies even where the standard of liability on the underlying claim is one of recklessness, see id. at 56, 103 S.Ct. at 1640, the jury could award punitive damages if, by exercising its "discretionary moral judgment," it determined that Booker's conduct called for "deterrence and punishment over and above that provided by compensatory awards." Id. at 52-54, 103 S.Ct. at 1638-1639. The issue of punitive damages thus was properly submitted to the jury.
 
 IV. Confusion of the Jury
 
 38
 In setting aside the punitive damage awards against Lark and Humphrey, the trial court evaluated the unusual circumstances surrounding the final verdicts returned by the jury, see supra p. 656, and found that it "could reasonably infer that the jury meant only to award damages against Booker and when told their verdict was incomplete, they simply redistributed their original award...." Thomas v. Booker, No. 80-1297C(2) (E.D.Mo. Oct. 14, 1983) (memorandum opinion of magistrate). Thomas argues that "[t]he most reasonable inference is that the jury completed the first verdict form thinking it included all three defendants." Brief of Appellee/Cross-Appellant at 19-20.
 
 
 39
 The first verdict form succinctly stated in its body "we find in favor of Plaintiff George Thomas against Defendant Thomas Booker," and made no mention of defendants Lark and Humphrey. Although we do not mean to say that Thomas's explanation of the jury's apparent confusion is completely implausible, we cannot say as matter of law that the jury construed such an explicit, uncomplicated verdict form as including all three defendants, especially when the jury was given that verdict form along with two others which were clearly limited to defendants Lark and Humphrey. The truth of the matter is that it is impossible now to ascertain why the jury initially failed to complete all three verdict forms. But the trial court's finding as to this matter is not clearly erroneous and, therefore, we accept it. We are puzzled, however, by the steps taken by the trial court to cure any prejudice that may have resulted from the jury confusion it found to have existed.
 
 
 40
 If the jury truly meant only to award damages against Booker, the trial court could not erase the prejudice to Lark and Humphrey merely by setting aside the punitive damage awards against them; Lark and Humphrey still would be prejudiced by the actual damage awards against them. And, the trial court made no attempt to cure possible prejudice to Thomas resulting from the jury's apparent confusion; while the jury clearly intended to award both actual and punitive damages against Booker, if, as the trial court concluded, the jury meant only to award damages against Booker, perhaps the jury's initial award of $5,000 actual damages and $25,000 punitive damages against Booker represented its true intention.
 
 
 41
 While our holding that the evidence is insufficient as a matter of law to support a verdict against Lark obviates the need to provide relief to Lark on the ground that the jury was confused, we have made no such determination regarding Humphrey. Accordingly, to avoid possible prejudice to Humphrey as a result of jury confusion, we reverse that portion of the trial court's judgment which sustained the jury's award of actual damages against Humphrey. However, just as Humphrey deserves to be relieved of an award against him that may have been the result of jury confusion, Thomas is entitled to have his claims against Humphrey resolved by a jury that is not laboring under avoidable confusion.[5] Thus we remand this case for a new trial of Thomas's claims against Humphrey.
 
 
 42
 With respect to Thomas's claims against Booker, to avoid possible prejudice to Thomas as a result of jury confusion, we give Thomas the option of accepting the existing judgment against Booker or of electing to retry his claims against Booker in their entirety. Of course, this does not mean that we view the initial award of damages against Booker as being more appropriate than the existing award. We merely hold that the initial award may have been what the jury intended, and that we would not be prepared to set aside such an award as being excessive. See, e.g., Bauer v. Norris, 713 F.2d at 413-14.
 
 V. Conclusion
 
 43
 For the reasons stated earlier in this opinion, we conditionally affirm the judgment of the trial court with respect to the award of actual and punitive damages against Booker: we remand this case to the trial court with instructions that if, within thirty days from the date this opinion is filed, Thomas notifies the trial court of his acceptance of the trial court's existing judgment as to Booker, that judgment shall be considered affirmed; if Thomas does not so accept the trial court's existing judgment as to Booker, that judgment shall be considered reversed and a new trial shall be granted on Thomas's claims against Booker for actual and punitive damages.[6] Because there is insufficient evidence to support a verdict against Lark, the judgment of the trial court setting aside the jury's award of punitive damages against Lark is affirmed and the judgment of the trial court sustaining the jury's award of actual damages against Lark is reversed. For the sole reason that the jury may have been confused, the judgment of the trial court setting aside the jury's award of punitive damages against Humphrey is affirmed, the judgment of the trial court sustaining the jury's award of actual damages against Humphrey is reversed, and this case is remanded to the trial court for a new trial on Thomas's claims against Humphrey for actual and punitive damages.
 
 
 44
 The portion of the trial court's judgment awarding attorney's fees to Thomas is vacated. Thomas has not prevailed against Lark, and is not entitled to attorney's fees against him. Thomas is not entitled to attorney's fees as against Humphrey unless he prevails in a new trial of his claims against Humphrey. Thomas has prevailed against Booker but is not entitled to attorney's fees as against Booker unless Thomas either (a) accepts the trial court's existing judgment against Booker, or (b) prevails in a new trial of his claims against Booker. Even if Thomas chooses to accept the trial court's existing judgment against Booker, the trial court must reconsider the amount of its award of attorney's fees in light of our reversal of the damage awards against Lark and Humphrey.
 
 
 45
 ROSS, Circuit Judge, dissenting.
 
 
 46
 I disagree with the majority's resolution of the "jury confusion" problem in this case, and its consequent holding as to defendants Booker and Humphrey. We need not, and should not, attempt to resolve the question of what the jury intended when it first returned with an incomplete verdict. Instead, we must look to the jury's final verdict, which was submitted by the jury after it returned from a second round of deliberations. At that time, the jury submitted all three verdict forms, and all three had been filled out in Thomas' favor. Absent a determination that the jury's final verdict was prejudiced by improper instructions or actions by the magistrate, or that the evidence does not support the verdict, there is no basis for tampering with the jury's final verdict in this case. Cf. Regional Investment Co. v. Haycock, 723 F.2d 38, 41 (8th Cir.1983) ("We must give the jury's verdict every reasonable indulgence.")
 
 
 47
 The majority notes that the magistrate should have "carefully clarified the situation before sending the jury back to complete its task." Ante at 661, n. 5. That may have been the better course. Yet, there is no evidence that any party objected to the comments made by the magistrate before the jury was sent back for further deliberation, or that any party requested the magistrate to give the jury additional instructions on what it was required to do. As such, the magistrate's failure to further clarify the situation is a basis for reversal only if plain error exists. See Rowe International, Inc. v. J-B Enterprises, Inc., 647 F.2d 830, 835 (8th Cir.1981). See also Saunders v. Chatham County Board of Commissioners, 728 F.2d 1367, 1369 (11th Cir.1984). Here, as the majority points out, the verdict forms were "explicit [and] uncomplicated" and each form was clearly limited to a particular defendant. Ante at 661. Further, the jury foreperson seemed to have no doubts as to what the problem with the jury's verdict was, or as to what was needed to be done to make it complete. See ante at 656 (discussion between foreperson and magistrate). Clearly, the magistrate's failure to clarify what was apparently an unambiguous situation can hardly be deemed plain error.
 
 
 48
 Due to the majority's reliance on the "jury confusion" problem, the majority does not reach the issue of whether the evidence was sufficient to support the verdict against Humphrey. I would reach that issue, and find in favor of Thomas. The evidence, taken in the light most favorable to the jury's verdict, supports a conclusion that Humphrey knew about the fight (the fight was noisy and was estimated to have lasted anywhere from forty-five minutes to two hours), yet, in reckless disregard of the inmate's right to be free from assault, permitted it to continue. Further, since the standard for awarding punitive damages in this case is substantially the same as that for actual damages, ante at 660, the jury's punitive damage award against Humphrey should be sustained notwithstanding the magistrate's JNOV.
 
 
 49
 In sum, I would affirm the jury's verdict as to Humphrey and Booker, with no new trial or option to have a new trial. I agree, however, with the majority's resolution of Lark's sufficiency of the evidence claim.
 
 
 
 [1]
 Defendants now argue that Sec. 636(c) unconstitutionally vests in magistrates power that is reserved under Article III of the United States Constitution and, therefore, that this case must be remanded to an Article III court. Subsequent to briefing and argument of the present case, this Court determined en banc that Sec. 636(c) is constitutional. Lehman Brothers Kuhn Loeb Incorporated v. Clark Oil & Refining Corporation, 739 F.2d 1313 (8th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). The position taken by defendants thus has been rejected
 
 
 [2]
 A holding that an instruction was not prejudicially erroneous is not necessarily tantamount to a holding that the instruction is an ideal model for future instructions
 
 
 [3]
 We have considered and found to be without merit a claim by Thomas that his cell assignments were made on the basis of an improper inmate classification
 
 
 [4]
 Thomas apparently has suffered a permanent loss of sight in his right eye. The record indicates that Thomas may have had visual deficiency in his right eye long before the events which are the basis for this lawsuit transpired. Additionally, based upon the evidence, it would be hard to escape the conclusion that Thomas's loss of sight was to some degree caused when Swink attacked Thomas on September 17, 1980. Certainly, Thomas could not recover against defendants for a visual impairment that existed before he was confined in the jail. And we have expressed our doubts that liability could attach based on the events up to and including the Swink incident. But, at the very least, the record supports an inference that the loss of sight in Thomas's right eye is partially attributable to the September 22, 1980 fight with Gillian and establishes that Thomas suffered a broken hand in that fight. We view whatever injuries Thomas sustained in the September 22, 1980 fight as the loss for which Thomas could be compensated once liability was determined
 
 
 [5]
 Confusion on the part of the jury may well have been avoided had the trial court carefully clarified the situation before sending the jury back to complete its task
 
 
 [6]
 We caution Thomas that should he elect to risk a new trial of his claims against Booker, he will have forfeited the existing judgment for $3,000 actual damages and $10,000 punitive damages against this defendant