758 P.2d 299

**Phillip GALLEGOS, Plaintiff–Appellant,**

v.

**STATE of New Mexico, et al.,**
**Defendants–Appellees.**

**No. 9072.**

Court of Appeals of New Mexico.

Dec. 15, 1987.

Certiorari Quashed June 30, 1988.

Ray M. Vargas, Albuquerque, for plaintiff-appellant.

Douglas A. Baker, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendants-appellees State of N.M., Corrections Dept., and Bruce King.

Patrick M. Shay, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellees Felix Rodriguez and Tom Trujillo.

## OPINION

BIVINS, Judge.

Plaintiff, a former inmate of the New Mexico Penitentiary, brought suit for damages resulting from injuries sustained on or about January 23, 1981, when he was assaulted by other inmates of cellblock six. His amended complaint alleges claims under the New Mexico Tort Claims Act, NMSA 1978, Sections 41–4–1 to –29 (Repl. 1986), and the federal Civil Rights Act, 42 U.S.C. Section 1983 (1982), and names as defendants the state, its Corrections and Criminal Rehabilitation Department (CCRD), former Governor Bruce King, former acting warden Felix Rodriguez, and deputy warden Tom Trujillo. After the trial court announced its intention to grant defendants' motions for summary judgment, but before entry of the judgments, plaintiff moved to further amend his complaint. He appeals from the summary judgments entered and from the denial of his motion to amend. We affirm.

On a motion for summary judgment, the burden is on the moving party to make a prima facie showing that there are no issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). Once the moving party makes such a showing, the burden shifts to the party opposing the motion to demonstrate that the facts before the trial court, together with all reasonable inferences from those facts, create a genuine issue of material fact. *Id.* It is sufficient if the party opposing the motion creates a "reasonable doubt" as to whether a factual issue exists. *Koenig v. Perez*, 104 N.M. 664, 726 P.2d 341 (1986). In reviewing the grant of summary judgment, the reviewing court will look at the whole record to determine whether a genuine issue of material fact exists. *Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977), cited with approval in *Koenig v. Perez*. The whole record, as we discuss later, means the record before the trial court on the summary judgment motions.

### 1. *Plaintiff's Tort Claims*

Plaintiff urges summary judgment was improper as to the claims under the Tort Claims Act because: (1) the state is liable under the doctrine of respondeat superior; (2) Section 41–4–6 waives immunity; and (3) the individual defendants should be denied immunity since their actions were unconstitutional. We reject each of these claims.

In *Abalos v. Bernalillo County District Attorney's Office*, 105 N.M. 554, 734 P.2d 794 (Ct.App.1987), we discussed which governmental entity can be sued and when. In *Abalos*, we reaffirmed the rationale for naming the particular agency that allegedly caused the harm, rather than the state, as announced in *Wittkowski v. State*, 103 N.M. 526, 710 P.2d 93 (Ct.App.1985), *modified on other grounds* in *Abalos v. Bernalillo County District Attorney's Office*. *Silva v. State*, 106 N.M. 472, 745 P.2d 380 (1987) recognizes this "doctrine of

remoteness." Here, CCRD is the proper governmental entity, not the state.

*Silva* answers plaintiff's contention that respondeat superior renders the governmental entity liable. Although *Silva* allows the application of respondeat superior under the Tort Claims Act, the Act still requires a negligent public employee who meets one of the waiver exceptions under Sections 41–4–5 to –12. *Abalos v. Bernalillo County District Attorney's Office.* If immunity has been waived, the particular agency that caused the harm may be held liable for the negligent act or omission of the public employee. *Id.*

■ Plaintiff relies on Section 41–4–6, which waives immunity for "damages resulting from bodily injury * * * caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building * * * machinery, equipment or furnishings." [1] Plaintiff argues that he was injured by a mop wringer wielded by another inmate; that the mop wringer and other cleaning equipment should have been kept outside the living area so that inmates could not have access to them; and that cleaning supplies should have been issued to inmates only for the purposes of cleaning their living area, and then only under supervision by correctional officers.

In *Wittkowski v. State*, we considered a similar argument. There, plaintiff argued that since the corrections department maintains and operates the state penitentiary, a public building, and the operation of the building includes security, custody and classification of inmates, immunity was waived where two inmates escaped and killed a resident of Colorado. In *Wittkowski*, we said that since the injuries did not occur due to a physical defect in a building, Section 41–4–6 did not apply.

Here, assuming a mop wringer can be considered either "machinery, equipment or furnishings," a question we need not decide, no claim is made that any physical defect existed with the mop wringer or that a defect caused plaintiff's injuries. The claim is that a portion of plaintiff's injuries was caused when that item was used as a weapon. Section 41–4–6 does not provide a waiver of immunity for that claim. We have since applied the rationale of *Wittkowski* in *Pemberton v. Cordova*, 105 N.M. 476, 734 P.2d 254 (Ct.App.1987), and *Martinez v. Kaune Corp.*, 106 N.M. 489, 745 P.2d 714 (Ct.App.1987). We likewise apply the rationale here and determine that the trial court properly granted summary judgment on plaintiff's tort claim. We note that *Silva* in dicta states that waiver of immunity under Section 41–4–6 might "arguably" apply to one acting within the scope of duties as secretary of corrections. We need not reach that issue however, because on these facts we hold that Section 41–4–6 does not provide a waiver of immunity for plaintiff's claim. Considering the plain language of the statute and prior case law, we do not believe *Silva* intended to extend liability under Section 41–4–6 to situations as presented in our case. To do so would open the door to liability for virtually all claims involving buildings, equipment, machinery or furnishings. Imposing such liability would undermine the immunity provided by the Tort Claims Act.

■ Relying on cases such as *Salazar v. Town of Bernalillo*, 62 N.M. 199, 307 P.2d 186 (1956) (holding town not responsible where mayor exceeded authority in ordering deputy marshall to assault plaintiff), plaintiff argues that the individual defendants were stripped of immunity by their alleged unconstitutional activities. *See also Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (state immunity not imparted to state officer who attempted to enforce unconstitutional statute). A similar claim was made and rejected in *Silva v. State*, 26 SBB 130 (Ct.App. 1986), *rev'd on other grounds*, *Silva v. State*, 106 N.M. 472, 745 P.2d 380 (1987). In *Silva*, we said that a cause of action under the Tort Claims Act must fit into one of the exceptions, and that any claim that

---

1. Plaintiff concedes in his brief that Section 41–4–12, which provides waiver of immunity to law enforcement officers, does not apply.

an individual was not acting within the scope of his duties is not a claim under the Act. Since the Act provides the exclusive remedy, to allow plaintiff to assert a claim outside the Act would render the Act meaningless. Further, we note this claim of lack of authority conflicts with plaintiff's own pleadings and the position he took in the trial court.

We affirm summary judgment on the claims under the Tort Claims Act.

2. *Claims Under 42 U.S.C. Section 1983*

The fact that plaintiff has no claim under the Tort Claims Act does not mean he cannot pursue a 42 U.S.C. Section 1983 claim growing out of the same facts. The federal remedy is supplemental to the state remedy. *Wells v. County of Valencia,* 98 N.M. 3, 644 P.2d 517 (1982).

Before addressing the merits of the 42 U.S.C. Section 1983 claims, we discuss two procedural matters: plaintiff's claim of error in the denial of his motion to further amend his complaint, made almost three weeks after the summary judgment hearing, and the question of what materials were properly before the trial court in support of and in opposition to summary judgment.

Plaintiff moved to amend his complaint after the trial court announced its intention to grant summary judgment and before entry of the formal order. Plaintiff's second amended complaint, attached to his motion, generally alleges under the 42 U.S.C. Section 1983 count claims against the individual defendants for failure to properly supervise. The trial court denied the motion to amend in the same orders in which it granted summary judgment to defendants. On appeal, plaintiff argues he should have been allowed to amend his complaint to conform to the evidence submitted to the trial court on the issue of failure to supervise. Although amendments to pleadings are favored and should be allowed when justice so requires, the denial of a motion to amend will be reversed only upon a showing of clear abuse of discretion. *Slide–A–Ride of Las Cruces, Inc. v. Citi-*zens Bank of Las Cruces, 105 N.M. 433, 733 P.2d 1316 (1987). Plaintiff makes no claim of abuse of discretion; therefore, we affirm the denial of his motion to amend. Notwithstanding affirmance, we do analyze plaintiff's claim as one based on failure to supervise, which is the theory plaintiff advanced at oral argument before this court.

What was properly before the trial court on defendants' motions for summary judgment must also be resolved against plaintiff. Defendants attached to their motions, filed October 2, 1985, the affidavits of Governor King, Rodriguez and Trujillo, and a one-page excerpt from the deposition of Harvey Winans. To his response filed October 21, 1985, plaintiff attached other portions of the deposition of Winans, portions of an Attorney General's Report on the Riot of February 1980, reports of the Compliance Monitor under the *Duran v. King,* U.S.Dist.Ct. No. 77–721 (D.N.M.), consent decree, response to request for admissions filed in the *Duran v. King* proceeding, and the affidavit of plaintiff. Plaintiff, however, in his brief, relies on other depositions that were not offered at the summary judgment hearing and were not filed until after the trial court had already decided to grant summary judgment. The taped transcript reflects that these depositions were not considered by the trial court in reaching its decision.

In *Roberts v. Piper Aircraft Corp.,* 100 N.M. 363, 670 P.2d 974 (Ct.App.1983), we said that in a summary judgment hearing, the trial court may properly consider only those depositions before it. *See also Schmidt v. St. Joseph's Hosp.,* 105 N.M. 681, 736 P.2d 135 (Ct.App.1987) (in a summary judgment hearing, the trial court may properly consider only those pleadings, depositions, answers to interrogatories, admissions and affidavits that are before it).

Plaintiff did not seek permission at the hearing in the trial court to supplement by way of depositions, or further affidavits, *see* SCRA 1986, 1–056(E), nor did he submit an affidavit seeking a continuance so he could oppose defendants' motions for summary judgment. *See* R. 1–056(F). When a motion for summary judgment is made and

supported, an adverse party may not rest upon the mere allegations of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing there is a genuine issue for trial. *See Oschwald v. Christie*, 95 N.M. 251, 620 P.2d 1276 (1980). And if he does not so respond, summary judgment, if appropriate, will be entered against him. R. 1–056(E). We now determine whether summary judgment was appropriate based only on what was before the trial court.

42 U.S.C. Section 1983, in pertinent part, provides: "Every person who, under color of any statute * * * of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured * * * *"

We assume, without deciding, that plaintiff's constitutional rights were violated by the assault. The critical issue is whether the individual defendants sued by plaintiff caused the violation of his rights within the meaning of the statute.[2]

We start our analysis with the well-settled proposition that liability under 42 U.S.C. Section 1983 cannot be based on the doctrine of respondeat superior. *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), quoted with approval in *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *see also Rubio v. Carlsbad Mun. School Dist.*, 106 N.M. 446, 744 P.2d 919 (Ct.App.1987); *DeVargas v. State ex rel. N.M. Dep't of Corrections*, 97 N.M. 447, 640 P.2d 1327 (Ct.App.1981). Instead, plaintiff must show some direct personal involvement by defendants in the violation of plaintiff's rights. *Hern v. Crist*, 105 N.M. 645, 735 P.2d 1151 (Ct.App.1987); *DeVargas v. State ex rel. N.M. Dep't of Corrections*.

■ From case law, we glean that the following elements must be established in order to impose supervisory liability under

42 U.S.C. Section 1983. First, there must have been a deprivation of plaintiff's constitutional rights by an employee under the control of the supervisor. *McClelland v. Facteau*, 610 F.2d 693 (10th Cir.1979). Second, this deprivation must rise to the level of deliberate indifference, *Little v. Walker*, 552 F.2d 193 (7th Cir.1977), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978); *Thomas v. Booker*, 762 F.2d 654 (8th Cir.1985), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986); *Wells v. County of Valencia*, or result from reckless disregard of plaintiff's rights. *Martin v. White*, 742 F.2d 469 (8th Cir.1984). Negligent conduct by the employee is not sufficient to give rise to a due process deprivation. *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Major v. Benton*, 647 F.2d 110 (10th Cir.1981). Such reckless disregard or deliberate indifference may be shown by the existence of a pervasive risk of harm to inmates from other prisoners and a failure by prison officials to respond reasonably to that risk. *Martin v. White; Murphy v. United States*, 653 F.2d 637 (D.C.Cir.1981). An isolated incident is insufficient to show a pervasive risk of harm. *Oklahoma City v. Tuttle; Withers v. Levine*, 615 F.2d 158 (4th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980); *see also Bennett v. Duckworth*, 578 F.Supp. 1380 (N.D.Ind.1984) (where serious assaults within the prison averaged less than one per month, no eighth amendment claim for unconstitutional level of violence existed). Third, the employer must have notice of this pervasive risk of harm. "[P]laintiff must show that the defendant was adequately put on notice of prior misbehavior." *McClelland v. Facteau*, 610 F.2d at 697. Once the supervisor has notice of the pervasive risk of harm, but fails to implement a policy that promotes correction of the harm or deters future conduct, liability may lie. *Martin v. White*. In short, there

---

**2.** Plaintiff does not appeal from the summary judgments in favor of the state and CCRD on the 42 U.S.C. Section 1983 claim.

must be an "affirmative link" between such deprivation and the actions or inactions of the supervisor and the harm done to plaintiff. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

This is not to say that defendants must have been personally involved in the specific incident in question, in this case, the attack on plaintiff. The requisite personal involvement might be satisfied if, for example, a defendant participated in the incident through such actions as the promulgation of a specific policy, the application of which denied a plaintiff his constitutional rights, *Monell v. Department of Social Services,* or if a defendant directed a subordinate to perform a specific act that violated the rights of a plaintiff. *United Steelworkers of Am. v. Dalton,* 544 F.Supp. 291 (E.D.Va. 1982). Similarly, if defendants were in a position of authority over the persons directly involved in the incident, knew of prior actions by those persons that denied the constitutional rights of others, and failed to take action to prevent future violations of the rights of others, including plaintiff, defendants might be personally involved within the meaning of 42 U.S.C. Section 1983. *McClelland v. Facteau.*

We believe *Spell v. McDaniel,* 824 F.2d 1380 (4th Cir.1987) summarizes the correct approach:

Only those deficiencies in police training policies that result from policy-maker fault of at least the degree of deliberate indifference to or reckless disregard for the constitutional rights of persons within police force jurisdiction can give rise to municipal liability; mere negligence on the part of policymakers is not sufficient. Subject to this fault requirement, training policy deficiencies for which municipal liability may be imposed include not only express authorizations of specific unconstitutional conduct, but tacit authorizations, and failures adequately to prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty.

Finally, a sufficiently close causal link must be shown between potentially inculpating training deficiency or deficiencies and specific violation. This requires first that a specific deficiency rather than general laxness or ineffectiveness in training be shown. It then requires that the deficiency or deficiencies be such, given the manifest exigencies of police work, as to make occurrence of the specific violation a reasonable probability rather than a mere possibility. In common parlance, the specific deficiency or deficiencies must be such as to make the specific violation "almost bound to happen, sooner or later," rather than merely "likely to happen in the long run." *See Patzner [v. Burkett*], 779 F.2d [1363] at 1367 [ (8th Cir.1985) ] (training so deficient that "police misconduct inevitably occurs").

*Id.* at 1390 (footnote omitted). Although *Spell* addressed the issue of alleged deficiencies in a municipality's training of police officers, we see no reason that this approach cannot also apply to the facts of our case.

▮ This "sufficiently close causal link" is absent in our case. The record before us contains no evidence of deliberate deprivation or reckless disregard of plaintiff's constitutional rights by defendants.

Each of the individual defendants submitted an affidavit that established that he was not present at the penitentiary on the night in question and, therefore, was not personally involved in the incident or directly supervising any of the correctional officers on duty that night. Plaintiff does not contest this. Thus, the issue turns on other forms of personal involvement that have been held to cause a violation of rights within the meaning of 42 U.S.C. Section 1983.

The record in our case is devoid of evidence that defendants knew or should have known that plaintiff would be attacked by other inmates. *Cf. Thomas v. Booker* (plaintiff had been victim of previous attacks and had asked several times to be placed in administrative segregation because he feared attacks by inmates). Nor does the record contain evidence that plaintiff had suffered previous attacks by inmates as in *Thomas v. Booker.* Defend-

ants showed that no issue of material fact existed regarding whether defendants exhibited a deliberate indifference to or reckless disregard of plaintiff's constitutional rights. As noted above, plaintiff must overcome this showing in order to avoid summary judgment.

Plaintiff points to excerpts from the first and second reports of the Compliance Monitor filed in the case of *Duran v. King,* excerpts from defendants' response to plaintiffs' first request for admissions in *Duran v. King,* and a one-page excerpt from Part II of the Report of the Attorney General on the February 2 and 3, 1980, Riot at the Penitentiary of New Mexico. The first report of the Compliance Monitor was filed in March 1981, well after the incident in question here. The report indicates that the penitentiary was understaffed at the time in question, and that eleven other incidents of violence had occurred in a period of two and one-half months preceding the attack on plaintiff. To the extent plaintiff relies on this report as showing laxness in supervision, and particularly in supervision with regard to searches for weapons, we note that only one incident involved a weapon. No additional details in the report support a theory that the level of violence was attributable to lax supervision or failure to discover weapons. In fact, the report attributes the violence to understaffing. The report does not, however, establish a fact issue of a pervasive risk of harm to plaintiff that would prove a deliberate indifference to or reckless disregard of plaintiff's constitutional rights.

The second report of the Compliance Monitor and responses to requests for admissions cover periods of time and events occurring *after* the assault on plaintiff. Events occurring after the attack are not relevant to plaintiff's claim.

The one-page excerpt from the Attorney General's Report was written prior to the attack on plaintiff and establishes that there was lax supervision at the penitentiary prior to the 1980 riot. Again, plaintiff has failed to show that this factor proved a pervasive risk of harm to himself.

Neither did the evidence show that guards failed to follow regulations or procedures when summoning help to stop the attack on plaintiff. Each of the affidavits indicates that the officers on duty during the incident followed the procedures outlined for entry of a living unit to control a fight among inmates. *Cf. Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir.1983) (sheriff and deputy liable for damages for severe injuries to college student jailed on misdemeanor charge; jail was managed in a manner indifferent to prisoners' safety). Plaintiff's affidavit and other materials provided do not refute this. While the presence of additional guards may have prevented plaintiff's injury, the record does not indicate that the guards present failed to follow prison policy. The guards summoned help as they were trained to do by their supervisors. Understaffing, of itself, does not establish a constitutional deprivation. Finally, the record before us contains no evidence that defendants' training of guards encouraged or developed a custom or practice that promoted the excessive use of force, as in *Spell v. McDaniel.*

█ Plaintiff asks us to impose absolute liability for his injuries because of the frequency of outbreaks of violence at the penitentiary. We decline to do so. *See Bennett v. Duckworth.* We do not condone the violence that occurs within the penitentiary walls, but we cannot impose 42 U.S.C. Section 1983 liability on defendants, where no fact question exists as to defendants' lack of deliberate indifference to or reckless disregard of plaintiff's rights. Where, as here, the record before us disclosed no genuine issue of material fact, summary judgment was proper.

We affirm the trial court's summary judgments and the denial of plaintiff's motion to amend.

IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.