784 F.2d 299
 George THOMAS, Appellee,
v.
Thomas BOOKER, Alfonso Lark and Major C.O. Humphrey, Appellants.
George THOMAS, Appellant,
v.
Thomas BOOKER, Alfonso Lark and Major C.O. Humphrey, Appellees.
George THOMAS, Appellee,
v.
Thomas BOOKER, Alphonso Lark and William Frank Humphrey, Appellants.
 Nos. 83-2540, 83-2541 and 83-2573.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Aug. 20, 1985.
Decided Feb. 14, 1986.
 
 Robert H. Dierker, St. Louis, Mo., for appellants.
 Gerald L. Birnbaum, O'Fallon, Mo., for appellee.
 Before LAY, Chief Judge, HEANEY, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, and BOWMAN, Circuit Judges, En Banc.
 ROSS, Circuit Judge.
 
 
 1
 George Thomas filed this 42 U.S.C. Sec. 1983 action alleging that three employees of the St. Louis City Jail, Thomas Booker, William Humphrey, and Alphonso Lark, violated his constitutional rights by failing to protect him from violent attacks by other inmates. After a panel of this court considered the case, see Thomas v. Booker, 762 F.2d 654 (8th Cir.1985), this court, on its own motion, granted rehearing en banc. We now affirm the judgment awarding Thomas $3,000 actual damages and $10,000 punitive damages against Booker and $1,000 actual damages against Humphrey. We also reinstate a jury verdict of $10,000 punitive damages against Humphrey which had been set aside by the trial court. Finally, we reverse a judgment awarding $1,000 actual damages against Lark.
 
 FACTS
 
 2
 Thomas was placed in the St. Louis City Jail as a pretrial detainee in May of 1980. On September 17, 1980, another prisoner, Gregory Swink, rushed into Thomas' cell and struck him in the right eye. After treatment, he was returned to the jail and placed in the same cell which he had occupied earlier. The cell was located on the fifth floor of the facility in what is termed "tier 5-1". Tier 5-1 houses the "general population" in general and prisoners classified as "aggressive" in particular.
 
 
 3
 On the morning of September 22, 1980, Thomas became involved in a fight with another prisoner, Howard Gillian, in the tier 5-1 dayroom. No guards appeared until the fight was essentially over. By that time, Gillian had suffered a broken jaw, while Thomas suffered a broken hand and retinal detachment in his right eye. Surgery on the eye failed to prevent blindness.
 
 
 4
 Thomas then initiated this suit. His claim against Booker and Lark was based on his placement in tier 5-1. Booker was the chief of security at the jail and Lark was the supervisor of correctional officers. The evidence with respect to Booker and Lark was summarized by the panel court as follows:
 
 
 5
 With respect to Booker, the record includes testimony by Thomas (1) that in May 1980, he asked Booker not to remove him from administrative segregation (where he initially had been placed upon his transfer to the jail from the city workhouse) because he feared other inmates might attack him; (2) that in July 1980, following the discovery in Thomas's cell of a homemade knife, he told the investigating committee of which Booker was a member that he felt he needed the weapon for protection; (3) that while he was in disciplinary segregation as punishment for the homemade knife incident, he told Booker that he feared for his physical safety if he was returned to the general population [; in response, Booker referred to Thomas as a "smart, big-mouth nigger" and advised him that "I'm going to send you somewhere where I won't have no trouble out of you"; immediately thereafter Thomas was sent to tier 5-1]; (4) that the day after his return to the jail from the hospital where he had been treated for injuries suffered in the September 17, 1980 attack by Swink, he again expressed his fear of attack by other inmates and asked Booker to remove him from the general population. Thomas also testified that, following the September 17, 1980 attack by Swink but preceding his September 22, 1980 fight with Gillian, he specifically asked Booker to move him away from cellmate Parker. The record can be read to indicate that it was Parker who instigated the fight between Thomas and Gillian. Additionally, other inmates testified that they heard Thomas ask Booker to remove him from the general population. Parker testified that he told Booker if Booker didn't move Thomas, Thomas was going to be "chased" off the floor. Finally, there is every indication in the record that although classification of inmates for cell assignment purposes generally was handled by a social services office and not by Booker, Booker had complete authority to move a prisoner for security reasons.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 With respect to Lark, Thomas's testimony establishes that he only spoke with Lark about his fear of attack by other inmates in the jail's general population on one occasion, and then only in a very generalized fashion. Lark told him that he should discuss his concerns with Booker, who was in charge of security. This conversation took place before Thomas ever was assigned to a general population cell; at the time, Thomas was in administrative segregation following his transfer to the jail from the city workhouse. There is nothing in the record to indicate that Lark knew of Thomas's subsequent complaints to Booker, of the September 17, 1980 attack by Swink, or of Parker's threats against Thomas.
 
 
 9
 Thomas v. Booker, supra, 762 F.2d at 658-59 (footnote omitted).
 
 
 10
 Thomas' claim against Humphrey was grounded on Humphrey's failure to detect and intervene in Thomas' fight with Gillian on September 22, 1980. Humphrey was a correctional officer at the jail. The panel summarized the evidence with respect to the claim against Humphrey as follows:
 
 
 11
 There is no dispute that Humphrey was on duty when the September 22, 1980 fight between Thomas and Gillian occurred and that the fight took place in an area of the jail to which Humphrey was assigned. It seems equally clear that guards were to make full rounds every fifteen to twenty minutes. However, little else about that fight or Humphrey's role regarding it is clear from the record. Thomas and other inmates estimated that the fight lasted anywhere from forty-five minutes to two hours and that during that time, no guard came by on rounds. Prison officials testified that it would be impossible for a fight to have gone undetected for such a long time. There was testimony by inmates that a great deal of noise was made during the fight. Prison officials testified that the amount of noise claimed by the inmates to have been generated by this fight surely would have attracted the attention of the guards. Thomas cites as proof of Humphrey's failure to make rounds a jail record which indicates that Humphrey left his assigned floor during his September 22, 1980 duty shift for approximately twenty-five minutes. But the jail record suggests that Humphrey did so in order to fulfill another duty function. Furthermore, Humphrey testified that even if he did leave the floor, his rounds would have been made by his supervisor.
 
 
 12
 Id. at 659-60.
 
 
 13
 By the consent of the parties, the jury trial in this case was held before a magistrate. See 28 U.S.C. Sec. 636(c). After the trial was concluded, the magistrate instructed the jury and submitted verdict forms to be used for each of the defendants.[1] After deliberating, the jury returned to the courtroom to announce its verdict. At this point, the magistrate was handed the verdict forms. The forms were blank except for the verdict form for defendant Booker. This form granted Thomas an award of $5,000 actual damages and $25,000 punitive damages. The magistrate then called the attorneys to the bench. After discussing the situation with the attorneys off the record, the following exchange took place:
 
 
 14
 THE COURT: I can only say this, Miss MacMillan, and I'll speak to you as the foreperson of the jury, it's incomplete.
 
 
 15
 THE FOREPERSON: You're right, we're just realizing that sitting here. I'm sorry.
 
 
 16
 THE COURT: You want to take it back and finish it for me?
 
 
 17
 THE FOREPERSON: Yes, I sure will.
 
 
 18
 Trial Transcript at 80-81. The jury retired again to deliberate upon its verdict.
 
 
 19
 When it returned, all three verdict forms were completed. The form for Booker had been modified so as to grant Thomas an award of $3,000 actual damages and $10,000 punitive damages. As completed, the forms for Humphrey and Lark gave Thomas an award of $1,000 actual damages and $10,000 punitive damages against Humphrey, and $1,000 actual damages and $5,000 punitive damages against Lark.
 
 
 20
 The defendants then filed a motion for a JNOV or a new trial. The magistrate partially granted the motion for JNOV by setting aside the punitive damage awards against Humphrey and Lark on the basis that the evidence did not support the awards. The defendants' motion was denied in all other respects.
 
 
 21
 The defendants then appealed, arguing that the motion should have been granted in its entirety. Thomas cross-appealed, arguing that the motion should have been denied in its entirety.
 
 DISCUSSION
 1. Substantive Liability
 
 22
 "[P]rison officials may be liable where they are 'deliberately indifferent to [a prisoner's] constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates.' " Martin v. White, 742 F.2d 469, 474 (8th Cir.1984) (quoting Branchcomb v. Brewer, 669 F.2d 1297, 1298 (8th Cir.1982)). Similarly, "a jury may be permitted to assess punitive damages in an action under Sec. 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). On appeal, the defendants argue that the jury instructions given by the magistrate failed to state the proper liability standard.
 
 
 23
 The challenged instruction reads as follows:
 
 
 24
 Your verdict must be for Plaintiff if you believe:
 
 
 25
 FIRST: Defendants knew or should have known that placing inmates in the general population and not providing close supervision made it highly foreseeable that some inmates, and in particular the Plaintiff George Thomas, would be physically attacked and seriously injured, and
 
 
 26
 SECOND: Defendants' conduct was grossly negligent or an egregious failure to protect the plaintiff George Thomas, and
 
 
 27
 THIRD: Such acts of defendants were done under the color of law of the State of Missouri, and
 
 
 28
 FOURTH: Such acts violated Plaintiff's Constitutional right to be free from cruel and unusual punishment.
 
 
 29
 FIFTH: As a direct result of such conduct, the plaintiff suffered injury.
 
 
 30
 Gross negligence as used in this instruction means a callous indifference or thoughtless disregard for the consequences of one's acts or failure to act.
 
 
 31
 Egregious failure to protect means a flagrant or remarkably bad failure to protect.
 
 
 32
 Instruction No. 7. Although defendants' counsel objected to this instruction, the only stated basis for the objection was that the evidence was insufficient to submit the matter to the jury:
 
 
 33
 MR. KOVAC: Your Honor, I'd like to object to Instruction No. . I believe that with regard to the first element, defendants knew or should have known placing inmates in the general population, et cetera; I don't believe there's any evidence in the case to support the giving of that instruction with regard to the first paragraph of Instruction No. .
 
 
 34
 Supp. Trial Transcript at 1-2 (emphasis added).[2] The defendants' present argument that the instruction applied an improper legal standard was not raised in the objection.
 
 
 35
 In Johnson v. Houser, 704 F.2d 1049 (8th Cir.1983), the court summarized the necessity of a specific objection to a challenged instruction:
 
 
 36
 Fed.R.Civ.P. 51 provides: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Rule 51 requires that an objection be "sufficiently specific to bring into focus the precise nature of the alleged error." Wilson v. Crouse-Hinds Co., 556 F.2d 870, 875 (8th Cir.) cert. denied, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977); quoting Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943). The purpose of Rule 51 is to compel litigants to afford the trial court an opportunity to correct any error in the instructions and also to prevent the losing party from obtaining a new trial through relying on a possible error in the original trial. Lange v. Schultz, 627 F.2d 122, 128 (8th Cir.1980).
 
 
 37
 Id. at 1051. In this case, defendants' counsel's objection failed to satisfy the specificity requirement of FED.R.CIV.P. 51. Thus, our examination of the challenged instruction is limited to a review of whether any error in the instruction is "plain error in the sense that a miscarriage of justice would otherwise result." Id. at 1051. "The plain error exception is narrow and is confined to the exceptional case in which error has affected seriously the fairness, integrity or public reputation of judicial proceedings." Id. at 1052.
 
 
 38
 A panel of this court concluded that the challenged instruction was not perfect, but that it was not so prejudicially erroneous as to warrant a reversal. The panel reasoned as follows:
 
 
 39
 Instruction No. 7 is virtually identical to an instruction previously found by this Court to be not prejudicially erroneous.[2]
 
 
 40
 2. A holding that an instruction was not prejudicially erroneous is not necessarily tantamount to a holding that the instruction is an ideal model for future instructions.
 
 
 41
 See Wade v. Haynes, 663 F.2d 778, 782 (8th Cir.1981), aff'd on other grounds sub nom. Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).[3] Subsequent to Wade v. Haynes, the Court determined that a defendant's conduct in cases such as the instant case should be evaluated in terms of "reckless disregard." See supra. Yet the precise term "reckless disregard" does not appear in Instruction No. 7. While the trial court might artfully have updated the language of its instruction to reflect the relevant statements of law made by this Court, we find that the failure to do so was, at worst, harmless error. By including in Instruction No. 7 the words "gross negligence," defined as "a callous indifference or thoughtless disregard," and "egregious failure to protect," defined as "a flagrant or remarkably bad failure to protect," the trial court sufficiently indicated to the jury the nature of conduct for which defendants could be held liable.
 
 
 42
 Defendants challenge the first paragraph of Instruction No. 7 which conditioned defendants' liability on a finding by the jury that defendants knew or should have known that placing Thomas in the jail's general population without close supervision made an attack upon him highly foreseeable. Defendants argue that this portion of Instruction No. 7 was inadequate and that a proper instruction would preclude liability unless defendants "knew or should have known of a specific, clear and present danger to the safety of [Thomas], a danger manifested by evidence of objective facts and circumstances which should have led [them], in the exercise of professional judgment, to act in certain ways." Brief of Appellants at 31. Defendants do not cite any authority in support of such an instruction. Moreover, we are not convinced that defendants' proposal correctly states the controlling law in a manner that would aid the jury.
 
 
 43
 In view of the above reasoning, we find that any error in the instruction did not constitute plain error.
 
 
 44
 The defendants also argue that the court erred in not granting their motion for a JNOV in the entirety because the evidence did not support the jury's verdict. In Smith v. Updegraff, 744 F.2d 1354 (8th Cir.1984), this court set forth the standard of review to be applied when considering such a challenge:
 
 
 45
 [I]n passing upon the motion for judgment, the trial court and this court are (1) to consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which plaintiffs' evidence tends to prove; (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusions to be drawn from it.
 
 
 46
 [Hanson v. Ford Motor Co., 278 F.2d 586, 596 (8th Cir.1960) ]. Moreover, "[c]ircumstantial as well as direct evidence ... is relevant to a determination of sufficiency" of the evidence in supporting the jury verdict, and the verdict may be overturned " 'only where the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.' " Zoll v. Eastern Allamakee Community School District, 588 F.2d 246, 250 (8th Cir.1978) quoting Giordano v. Lee, 434 F.2d 1227, 1231 (8th Cir.1970) (emphasis in original).
 
 
 47
 Id. at 1366. Applying this standard, we find that the trial court properly denied the JNOV motion as it applied to Booker. With respect to Humphrey, the trial court erred in partially overturning the jury's verdict. The evidence, taken in the light most favorable to the jury's verdict, supports a conclusion that Parker forced Thomas to fight Gillian[4] and that Humphrey knew about the fight (the fight was noisy and was estimated to have lasted anywhere from forty-five minutes to two hours), yet, in reckless disregard of the inmate's right to be free from assault, permitted it to continue. Since the standard for awarding punitive damages in this case is substantially the same as that for actual damages, the jury's punitive damage award against Humphrey should have been sustained. Finally, with respect to Lark, the trial court properly overturned the jury's verdict awarding punitive damages against him, but erred in not overturning the award of actual damages. The evidence does not support a conclusion that Lark acted in reckless disregard of Thomas' right to be free from violent attacks, so no damages could be assessed against Lark.
 
 2. Jury Confusion
 
 48
 A panel of this court concluded that the events surrounding the jury's return of its verdict indicated that the jury was confused and that the final verdict which the jury returned may not have represented its true intention. The panel recognized that "it is impossible now to ascertain why the jury initially failed to complete all three verdict forms." Thomas v. Booker, supra, 762 F.2d at 661. Nevertheless, the panel adopted the magistrate's finding that "the jury meant only to award damages against Booker and when told their verdict was incomplete, they simply redistributed their original award...." Thomas v. Booker, No. 80-1297C(2), slip op. at 3 (E.D.Mo. Oct. 14, 1983) (memorandum opinion of magistrate on defendants' motion for JNOV or new trial).
 
 
 49
 Although the magistrate's decision to grant a partial JNOV may have been affected by the perceived jury confusion, we conclude that the actual legal basis for the decision was the magistrate's finding that the evidence did not support the verdict. This conclusion is reached upon a reading of the complete text of the magistrate's opinion on this issue, which states in relevant part:
 
 
 50
 The Court could reasonably infer that the jury meant only to award damages against Booker and when told their verdict was incomplete, they simply redistributed their original award as indicated. The punitive damages against Booker are barely supported by the evidence. There is inadequate evidentiary support for a punitive award against either Lark or Humphrey.
 
 
 51
 Accordingly, it is this Court's opinion that the assessment of punitive damages against Defendant Lark and Defendant Humphrey should be set aside.
 
 
 52
 Id. We note also that, on appeal, the parties did not raise the possibility of jury confusion as a separate basis for a reversal or new trial. Nevertheless, under the circumstances of this appeal, we must determine whether the perceived jury confusion warrants any action by this appeals court.
 
 
 53
 We conclude that we need not and should not attempt to resolve the question of what the jury intended when it first returned with an incomplete verdict. Instead, we must look to the jury's final verdict, which was submitted by the jury after it returned from a second round of deliberations. At that time, the jury submitted all three verdict forms, and all three had been filled out in Thomas' favor. Absent a determination that the jury's final verdict was prejudiced by improper instructions or actions by the magistrate, or that the evidence does not support the verdict, there is no basis for tampering with the jury's final verdict in this case. Cf. Regional Investment Co. v. Haycock, 723 F.2d 38, 41 (8th Cir.1983) ("We must give the jury's verdict every reasonable indulgence."). See also Smith v. Updegraff, supra, 744 F.2d at 1368 ("speculation as to what the jury intended" by its verdict is not permitted since "this court cannot replace the jury's judgment with its own"); Chicago Rock Island and Pacific Railroad Co. v. Speth, 404 F.2d 291, 295-96 (8th Cir.1968) (rule that certain jury errors cannot be used to impeach a verdict exists to protect the jury deliberation process).
 
 
 54
 There is no evidence that any party objected to the comments made by the magistrate before the jury was sent back for further deliberations, or that any party requested the magistrate to give the jury additional instructions on what it was required to do. In fact, although the bench conference was not recorded, Thomas' counsel disclosed at oral argument that counsel for the parties both agreed that the magistrate should tell the jury only that the verdict was not complete. As such, the magistrate's failure to further clarify the situation is a basis for reversal only if plain error exists. See Rowe International, Inc. v. J-B Enterprises, Inc., 647 F.2d 830, 835 (8th Cir.1981). See also Saunders v. Chatham County Board of Commissioners, 728 F.2d 1367, 1368-69 (11th Cir.1984). Here, the verdict forms were explicit and uncomplicated and each form was clearly limited to a particular defendant. Further, the jury foreperson seemed to have no question as to what the problem with the jury's verdict was, or as to what was needed to be done to make it complete. See ante at 302-03 (discussion between foreperson and magistrate). Clearly, the magistrate's failure to clarify what was apparently an unambiguous situation can hardly be deemed plain error. Accordingly, we conclude that the mere possibility that the jury was confused when it returned its final verdict does not warrant any action by this court.
 
 3. Apportionment of Actual Damages
 
 55
 The verdict forms submitted by the trial court permitted the jury to apportion the actual damages amongst the defendants. It could reasonably be argued that the resulting apportionment of actual damages was improper because the defendants should share joint and several liability for the actual damages incurred by Thomas.
 
 
 56
 However, no objection to the verdict forms or to the lack of an instruction on apportionment of actual damages was raised at trial. Nor did the parties contest the apportionment of actual damages at any other stage of the trial or on appeal. When the issue was raised by a member of this court at oral argument, counsel for both parties had no complaint with the apportionment of actual damages in this case and, in fact, defended the apportionment. As such, the plain error doctrine is applicable to this issue.
 
 
 57
 When the parties to a case are satisfied with an issue and no other parties are affected, we should be especially hesitant to correct any error which may have been committed. Here, if the apportionment of actual damages was an error, there would be only two ways to correct the error. First, we could amend the judgment against Booker and Humphrey to make them jointly and severally liable for some amount of actual damages. See 28 U.S.C. Sec. 2106. Second, we could remand for a new trial.
 
 
 58
 Neither method is particularly desirable. The first would require us to speculate as to the proper amount of actual damages to award. For example, if we were to award $5,000, we would have to speculate that the jury's final verdict awarding separate amounts of actual damages against each of the three defendants ($3,000 against Booker, $1,000 against Humphrey, and $1,000 against Lark) was in fact an apportionment of Thomas' total actual damages of $5,000. See Smith v. Updegraff, supra, 744 F.2d at 1367-68. The second would lead to more delay and expense to settle a matter which the parties are comfortable with. In light of these choices, we find that any error which may have been committed in apportioning Thomas' actual damages was not plain error. See Cleavinger v. Saxner, --- U.S. ----, 106 S.Ct. 496, 499, 88 L.Ed.2d 507 (1985) (Supreme Court affirmed jury verdict which apportioned compensatory damages amongst members of prison disciplinary committee who were held liable for violating prisoners' due process rights; issue of apportionment neither raised nor discussed).
 
 4. Attorneys' Fees
 
 59
 The trial court awarded Thomas an attorneys' fees award of $15,000 against the three defendants. The defendants contend that the award was improper because the award exceeded the amount recoverable by Thomas' attorney under a contingent-fee contract. This court, however, has previously held that a contingent-fee contract does not set a ceiling on the amount of attorneys' fees awardable in a section 1983 action. Sisco v. J.S. Alberici Construction Co., 733 F.2d 55, 57 (8th Cir.1984).
 
 
 60
 A remand on the matter of attorneys' fees is required, however, to determine whether our resolution of this case (notably, our reversal of the damage award against Lark and our reinstatement of the jury verdict awarding punitive damages against Humphrey) requires a modification of the fee award. In addition, we reverse the attorneys' fee award against Lark because Thomas has not prevailed against him. See Kentucky v. Graham, --- U.S. ----, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("where a defendant has not been prevailed against * * * Sec. 1988 does not authorize a fee award against that defendant.").
 
 CONCLUSION
 
 61
 We affirm the judgment against Booker and Humphrey but reverse the trial court's JNOV to the extent that it set aside the $10,000 punitive damage award against Humphrey. We also reverse the judgment awarding damages against Lark and the award of attorneys' fees against Lark. Finally, we remand for a reconsideration of the attorneys' fee award against Booker and Humphrey.
 
 
 62
 McMILLIAN, Circuit Judge, concurring in part and dissenting in part.
 
 
 63
 I concur in much of the majority's decision. I join the majority's decision to (1) affirm the judgment holding defendants Booker and Humphrey liable for actual damages and awarding $10,000 in punitive damages against Booker, (2) reverse the grant of judgment notwithstanding the verdict (jnov) to the extent that it set aside the award of $10,000 in punitive damages against Humphrey, (3) reverse the judgment awarding actual damages against defendant Lark and affirm the jnov in favor of Lark for punitive damages because of insufficient evidence. Finally, I agree that a remand for modification of the award of attorney's fees is required.
 
 
 64
 However, I believe the award of actual damages reflects an improper attempt on the part of the jury to apportion compensatory or actual damages among the defendants and, accordingly, I dissent from the majority's decision to affirm the award of actual damages against Booker and Humphrey. I would vacate the award of actual damages and remand the case to the magistrate for a new trial on the issue of actual damages only.
 
 
 65
 With respect to Instruction No. 7, I agree that the failure to use the term "reckless disregard" was not plain error. At 305. As was noted by the majority panel opinion,
 
 
 66
 [b]y including in Instruction No. 7 the words "gross negligence," defined as "a callous indifference or thoughtless disregard," and "egregious failure to protect," defined as "a flagrant or remarkably bad failure to protect," the trial court sufficiently indicated to the jury the nature of conduct for which defendants could be held liable.
 
 
 67
 Thomas v. Booker, 762 F.2d 654, 657 (8th Cir.1985).
 
 
 68
 In addition, I would note, as did the majority panel opinion, that Instruction No. 7 improperly referred to the eighth amendment's prohibition against cruel and unusual punishment and thus subjected plaintiff Thomas to an erroneous standard of proof. Id. at 658, citing Putman v. Gerloff, 639 F.2d 415, 418 (8th Cir.1981). As noted by the majority panel opinion, 762 F.2d at 657, and the majority en banc, at 304 & n. 3, Instruction No. 7 was "virtually identical" to the instruction given and found not prejudicially erroneous by this court in Wade v. Haynes, 663 F.2d 778, 782 (8th Cir.1981), aff'd on other grounds sub nom. Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). However, the plaintiff in Wade v. Haynes was a convicted prisoner; at the time of the incidents in question, Thomas was being held in the city jail as a pretrial detainee. The due process clause of the fourteenth amendment rather than the eighth amendment should have been relied upon to evaluate Thomas' claim as a pretrial detainee. Bell v. Wolfish, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979), citing Ingraham v. Wright, 430 U.S. 651, 671-72 n. 40, 97 S.Ct. 1401, 1412-13 n. 40, 51 L.Ed.2d 711 (1977). The relevant inquiry under the due process clause was whether the defendants' treatment of Thomas amounted to punishment, Bell v. Wolfish, 444 U.S. at 535, 99 S.Ct. at 1872, and the jury should have been instructed accordingly. See Putman v. Gerloff, 639 F.2d at 420. The magistrate should not have given the Wade v. Haynes instruction in the present case without appropriate modification. Because the jury found in favor of Thomas under the more demanding eighth amendment standard of proof, however, this error was harmless. See Thomas v. Booker, 762 F.2d at 658; Putman v. Gerloff, 639 F.2d at 419 & n. 2 (plain error).
 
 
 69
 I agree with the majority opinion's analysis of the magistrate's rulings on the defendants' motions for JNOV. At 305-06. When viewed in the light most favorable to Thomas, the evidence was sufficient to support the jury's verdict against Booker and Humphrey for actual and punitive damages but insufficient to support the verdict against Lark for both actual and punitive damages.
 
 
 70
 However, the final jury verdict awarding actual damages ($3,000 against Booker, $1,000 against Humphrey and $1,000 against Lark) reflects an improper attempt on the part of the jury to apportion actual damages among the defendants. The initial verdict, as indicated on the verdict form returned in favor of Thomas and against Booker, awarded Thomas $5,000 in actual damages; the final verdict, as indicated on three verdict forms returned in favor of Thomas and against each defendant, awarded Thomas a total of $5,000 actual damages but erroneously apportioned the award among the three defendants.[1] The injury or damage in the present case was indivisible, and defendants Booker and Humphrey were joint and severally liable for actual damages. See generally Restatement (Second) of Torts Secs. 433, 433A & comment i, 433B (1965); cf. Smith v. Updegraff, 744 F.2d 1354, 1365 (8th Cir.1984) (joint and several liability of co-conspirators); Mitchell v. Volkswagenwerk, AG, 669 F.2d 1199, 1203
 
 
 71
 (8th Cir.1982) ("second collision").
 
 
 72
 Given the jury's final verdict and the dismissal of Lark on appeal, one can only speculate whether the jury intended to award Thomas $5,000 or perhaps only $4,000 in actual damages. For this reason, I would vacate the award of actual damages and remand for a new trial on the issue of actual damages only. In my view the issue of actual damages is sufficiently separate and distinct from the issues of liability for actual and punitive damages and the amount of punitive damages that, under the totality of the circumstances, a new trial on all the issues is not required.
 
 
 73
 BOWMAN, Circuit Judge, dissenting.
 
 
 74
 Thomas complains that he was deprived of his liberty interest in personal security without due process of law in violation of the due process clause of the Fourteenth Amendment. The gist of his complaint is that the defendants failed to take adequate steps to address his expressed concern regarding his personal safety while he was being detained prior to trial. Cf. Ingraham v. Wright, 430 U.S. 651, 672, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). A violation of substantive rights under the due process clause requires a violation of one of the "specific protections defined in the Bill of Rights," Daniels v. Williams, --- U.S. ----, ----, 106 S.Ct. 662, 677, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring), or "conduct that shocks the conscience." Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). No violation of specific Bill of Rights protections is at issue. Since I do not perceive that the complaint raises any questions as to whether defendants conduct was "shocking" nor does the trial record reflect any such theory, Thomas's claim must be one of procedural due process. Cf. Davidson v. Cannon, --- U.S. ----, ----, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). Thomas's claim was submitted to the jury under a "gross negligence" or "egregious failure to protect" standard and thus survives Daniels and Davidson, which hold that the due process clause is not implicated by the mere negligence of an official which causes injury to life, liberty, or property. Daniels, --- U.S. at ----, 106 S.Ct. at 663; Davidson, --- U.S. at ---- - ----, 106 S.Ct. at 669-72.
 
 
 75
 Our Circuit has not directly addressed the issue of whether Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), applies to procedural due process claims based on deprivations of liberty as well as to those based on deprivations of property. In Parratt, the Supreme Court held that "takings of property without any predeprivation process" are permissible under the due process clause of the Fourteenth Amendment when the loss is the "result of a random and unauthorized act by a state employee" rather than "a result of some established state procedure." 451 U.S. at 541, 101 S.Ct. at 1916. The Court noted that "[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." Id. The Court found that the availability of a meaningful post-deprivation hearing satisfied the requirements of procedural due process because there were state remedies that could have fully compensated the plaintiff, even though those remedies may not have been as extensive as the remedies available under section 1983. Id. at 537-44, 101 S.Ct. at 1913-17.
 
 
 76
 In the present case, the conduct complained of by Thomas is not conduct that is pursuant to established state procedures; it is conduct that is clearly "random and unauthorized." Parratt, 451 U.S. at 541, 101 S.Ct. at 1916; see Logan v. Zimmerman Brush Co., 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982). As the Supreme Court made clear in Hudson v. Palmer, the "controlling inquiry" under Parratt "is solely whether the state is in a position to provide for predeprivation process." 104 S.Ct. 3194, 3204 (1984). In my view, there is no logical reason to restrict the application of Parratt to property deprivations.
 
 
 77
 Since a state is in no better position to anticipate random or unauthorized deprivations of liberty than it is of property, I believe that the rationale of Parratt extends to cases of liberty deprivations. The decisions of the majority of other circuits that have considered this question support this conclusion. See Toney-El v. Franzen, 777 F.2d 1224, 1227-28 (7th Cir.1985) ("In section 1983 actions challenging the mistakes made by state employees rather than the state procedures by which these mistakes were made, Parratt requires a court ' "to consider the adequacy and availability of remedies under state law before concluding a deprivation of life, liberty, or property violates due process of law"....' "); Wilson v. Beebe, 770 F.2d 578, 584 (6th Cir.1985) (en banc) (nothing in Parratt justifies different treatment of due process claims for deprivation of liberty); Daniels v. Williams, 748 F.2d 229, 232 (4th Cir.1984) (en banc) (deprivation of liberty not actionable under section 1983 because post-deprivation remedy available in state courts), aff'd on other grounds, --- U.S. ----, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); cf. Daniels, --- U.S. at ---- & n. 1, 106 S.Ct. at 666 & n. 1 (Court need not decide whether state remedy is inadequate for deprivation of liberty interest because official's conduct was merely negligent and therefore not actionable under Sec. 1983); Patterson v. Coughlin, 761 F.2d 886, 890 (2d Cir.1985) (liberty deprivations require procedural safeguards "at least equal" to those necessary regarding deprivations of property; Parratt not applicable because deprivation not "random and unauthorized"); Mills v. Smith, 656 F.2d 337, 340 n. 2 (8th Cir.1981) (per curiam) (Parratt cited in deprivation of liberty case). But see Brewer v. Blackwell, 692 F.2d 387, 394-95 & 395 n. 11 (5th Cir.1982) (Parratt not applicable to deprivations of liberty). See also Haygood v. Younger, 769 F.2d 1350, 1356 (9th Cir.1985) (en banc) (Ninth Circuit "has not spoken with one voice on whether the taking of liberty demands inherently greater process than the taking of property").
 
 
 78
 Seeing no principled basis for applying Parratt to property interests but not to liberty interests, I believe that to determine whether Thomas's section 1983 claim is cognizable in federal court we must ascertain whether he has adequate post-deprivation remedies under state law. Cf. Hudson, 04 S.Ct. at 3204. Because this matter has not been addressed by the District Court, I would remand to the District Court with directions to determine whether Thomas has an adequate remedy under state law. If he does, I believe that he is barred from bringing his action in federal court because the deprivation of his liberty interest then would not have been without due process of law. An adequate state remedy being available, there would be no violation of procedural due process under the Fourteenth Amendment and no predicate act upon which Thomas could base his section 1983 claim. In that event, Thomas's claim would have to be dismissed since under Parratt the federal courts would be without subject matter jurisdiction to hear it. The Parratt issue is a very significant one, and I believe our Court should take this occasion, while we are sitting en banc in a case that raises the issue, to address it. I would hold that Parratt applies to this case and that a remand is required.
 
 
 79
 Assuming arguendo that Parratt does not bar the prosecution of this case in federal court either because Parratt does not apply to deprivations of liberty interests or because Thomas does not have an adequate state remedy, I dissent from the Court's decision with respect to Humphrey, and concur in the Court's decision to affirm the judgment awarding actual and punitive damages against Booker and to reverse the judgment and award of attorneys' fees against Lark.
 
 
 80
 The jury initially returned to the courtroom after its deliberations having awarded Thomas $5,000 actual damages and $25,000 punitive damages on a verdict form designating defendant Booker and having left blank the two verdict forms designating Lark and Humphrey. After the magistrate discussed the situation off the record with the attorneys, the following exchange took place:
 
 
 81
 THE COURT: I can only say this, Miss MacMillan, and I'll speak to you as the foreperson of the jury, it's incomplete.
 
 
 82
 THE FOREPERSON: You're right, we're just realizing that sitting here. I'm sorry.
 
 
 83
 THE COURT: You want to take it back and finish it for me?
 
 
 84
 THE FOREPERSON: Yes, I sure will.
 
 
 85
 Trial Transcript at 80-81.
 
 
 86
 The jury retired and returned some eight minutes later having completed all three verdict forms. Thomas again was awarded $5,000 actual damages, but the actual damage award now had been apportioned by the jury among all three defendants--$3,000 against Booker, $1,000 against Lark, and $1,000 against Humphrey. Likewise, Thomas again was awarded $25,000 punitive damages--$10,000 against Booker, $5,000 against Lark, and $10,000 against Humphrey.
 
 
 87
 In setting aside the punitive damage awards against Lark and Humphrey, the trial court evaluated the unusual circumstances surrounding the final verdict returned by the jury, and found that it "could reasonably infer that the jury meant only to award damages against Booker and when told their verdict was incomplete, they simply redistributed their original award...." Thomas v. Booker, No. 80-1297C(2) (E.D.Mo. Oct. 14, 1983) (memorandum opinion of magistrate).
 
 
 88
 The first verdict form succinctly stated in its body "we find in favor of plaintiff George Thomas against defendant Thomas Booker," and made no mention of defendants Lark and Humphrey. The trial court made the specific finding, noted above, that the jury intended only to award damages against Booker, not against Lark and Humphrey. The trial court made this finding based on its colloquy with the jury and upon its observations of the jury's actions. The finding is indisputably a finding of fact and it is not clearly erroneous. See Anderson v. City of Bessemer City, --- U.S. ----, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Because the jury reported its verdict and found only Booker liable, I believe it was plain error for the trial court to send the jury back for further deliberations against Lark and Humphrey. It seems clear to me that the jury's subsequent verdict extending liability to Lark and Humphrey was prejudiced by the manner in which the trial court directed the jury to "take it back and finish it for me." To a jury that already had rendered its verdict and thought it had completed its work, the trial court's cryptic insistence that they return to the jury room for further deliberations could easily have been understood as a directive that, having found Booker liable, they also must find Lark and Humphrey liable.[1]
 
 
 89
 Lark escapes liability, despite the trial court's error, because our Court now holds that the evidence was insufficient as to him. As to Humphrey, however, the Court has found the evidence of liability sufficient to make a submissible case. Although I do not disagree with that conclusion, it does seem to me that the sufficiency question goes Thomas's way by only the slimmest of margins. In view of the problem of jury confusion resulting from the trial court's error, I do not believe it can be said with any reasonable degree of confidence that the jury made an unprejudiced and clear-cut determination that the evidence concerning Humphrey, barely sufficient to make a submissible case under the "gross negligence" or "egregious failure to protect" standard, was to be taken as establishing his liability. That being so, it follows that today's decision creates the substantial risk of a miscarriage of justice as to Humphrey. To avoid that substantial risk, I would affirm the judgment of the trial court setting aside the jury's award of punitive damages against Humphrey, reverse the judgment of the trial court sustaining the jury's award of actual damages against Humphrey, and remand the case for a new trial on Thomas's claims against Humphrey for actual and punitive damages.
 
 
 
 [1]
 For example, the verdict form for defendant Booker read as follows:
 VERDICT
 We, the jury, unanimously find as follows:
 On Plaintiff's claim for violation of his civil rights, we find in favor of Plaintiff George Thomas against Defendant Thomas Booker.
 We, the jury assess damages of Plaintiff as follows:
 For Actual Damages $________ (Stating amount).
 For Punitive Damages $________ (Stating amount).
 _ _ _
 FOREPERSON
 
 
 [2]
 Defendants' motion for a new trial also contended that Instruction No. 7 was improper. Again, the only given ground for this contention was the lack of evidence to support the instruction
 
 
 [3]
 The verdict directing instruction in Wade v. Haynes read as follows:
 Your verdict must be for the plaintiff if you believe:
 FIRST: Defendants knew or should have known that placing two or more inmates in the same cell in administrative segregation with only one guard on duty in that building made it highly foreseeable that some inmates, and in particular the plaintiff Daniel R. Wade, would be physically attacked and sexually abused, and
 SECOND: Defendants' conduct was grossly negligent or an egregious failure to protect the plaintiff Daniel R. Wade, and
 THIRD: Such acts of the defendants were done under the color of the law of the State of Missouri, and,
 FOURTH: Such acts violated plaintiff's constitutional right to be free from cruel and unusual punishment, and,
 FIFTH: As a direct result of such conduct, the plaintiff suffered injury.
 Gross negligence as used in this instruction means a callous indifference or a thoughtless disregard for the consequences of one's act or failure to act.
 Egregious failure to protect means a flagrant or remarkably bad failure to protect.
 Wade v. Haynes, 663 F.2d 778, 782 (8th Cir.1981). The court responded to the defendants' objections to this instruction and other instructions relating to an eighth amendment violation with the following comments:
 These instructions make it clear that for plaintiff to recover defendant's acts must have violated plaintiff's right to be free from cruel and unusual punishment. Thus, defendant's action must have been more than negligent, his conduct must have been such that it was done with callous disregard of plaintiff's right not to be punished in an inhumane and base way. The mere placement of plaintiff in the cell with two others from the general population without further incident would not have given legal sustenance to his claim under the eighth amendment. It was the callous nature of this act which recklessly exposed him to inhumane treatment which constituted the actionable wrong. The inhumane treatment was part of the wrong in the same sense as if Smith had committed the harm himself.
 We find no prejudicial error in the instructions.
 Id. (Emphasis in original.) The court also noted that "[t]he objection concerning the use of [the term] 'callous indifference' is specious." Id. at 782 n. 2.
 
 
 [4]
 Parker, the apparent leader of the prisoners on tier 5-1, testified as follows:
 Q. Did you have anything to do with starting or stopping that fight personally?
 A. I started and I stopped it.
 Q. You started it and you stopped it but you actually didn't--you didn't participate in the fight?
 A. No, I didn't.
 Q. How could you start the fight?
 A. Well, by suggesting--if they wouldn't have fought against each other then we'd had a fight, me and Mundane [ (another inmate) ] against him [Thomas] and the other guy [Gillian].
 Q. And how did you stop it?
 A. When he [Thomas] grabbed his eye and folded over in the corner, I told him [Gillian] to stop hitting.
 * * *
 Q. You wouldn't have classified this fight as a fight for fun, would you, between Gillian and Thomas?
 A. No, sir.
 Trial Transcript, Parker at 11-12 & 21.
 
 
 [1]
 The incidence of confusing jury verdicts involving multiple defendants and actual and punitive damages might be reduced if the parties and the trial courts used more carefully drafted verdict forms. For example, Missouri Approved Jury Instructions Sec. 36.12 (2d ed. 1969) suggested the following:
 If you find the issues in favor of plaintiff and find that plaintiff is entitled to actual damages only, your verdict may be in the following form: We, the jury, find the issues in favor of plaintiff and against defendants (here insert the names of defendants against whom you find) and we assess plaintiff's damage at $________ (stating the amount).
 If you find for plaintiff and against one or more defendants and if you further find that plaintiff is also entitled to punitive damages, then your award of punitive damages shall be in the following form: We, the jury, find the issues in favor of plaintiff and we find that plaintiff is entitled to punitive damages against the following defendants in the following amounts:
 ------------------- -------------------
 (name of defendant) (amount of punitive
 damages assessed)
 ------------------- -------------------
 (name of defendant) (amount of punitive
 damages assessed)
 Missouri Approved Jury Instructions Sec. 36.12 (3d ed. 1981) (footnotes omitted) suggested the following revised verdict form:
 On the claim of plaintiff (state the name) for personal injuries against defendant (state the name of one defendant), we, the undersigned jurors, find in favor of: (state name of plaintiff or defendant).
 On the claim of plaintiff (state the name) for personal injuries against defendant (state the name of the other defendant), we, the undersigned jurors, find in favor of: (state name of plaintiff or defendant).
 Note: Complete the following paragraph only if one or more of the above findings is in favor of plaintiff (state the name).
 We, the undersigned jurors, assess the damages of plaintiff (state the name) as follows:
 For actual damages $________ (stating the amount).
 For punitive damages against defendant (state the name) $________ (stating the amount or, if none, write the word, "none").
 For punitive damages against defendant (state the name) $________ (stating the amount or, if none, write the word, "none").
 
 
 [1]
 Of course, a few words by the trial court to the jury, making it clear that their having found Booker liable did not require them to find Lark and Humphrey liable, and that they must consider the evidence and the instructions as to each of the latter two defendants individually, would have avoided the problem. The mistake was not in sending the jury back to finish their work, but in the manner in which this was done