907 F.2d 848
 Richard Evan WRIGHT and Gregory Charles Wright, Appellees,
v.
Jim JONES; Tony Gammon; Theresa Thornburg; Jerry Hudson;
Jim Moore; Larry Barnes; Robin Webb; Mr.
Strawbetto; John Pemberton; Roger
Tipton; Lt. Nelson; Officer Strain;
Lawrence Mills; Lt. Yagel; R.L. Rucker; and L.S. Wegs,
Appellants.
Richard Evan WRIGHT and Gregory Charles Wright, Appellants,
v.
Jim JONES; Tony Gammon; Theresa Thornburg, Appellees
Jerry Hudson; Jim Moore; Larry Barnes; Robin Webb; Mr.
Strawbetto; John Pemberton; Roger Tipton; Lt.
Nelson; Officer Strain; Lawrence
Mills; Lt. Yagel; R.L.
Rucker; and L.S. Wegs.
 Nos. 89-1974, 89-1975.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 14, 1990.
Decided July 10, 1990.
 
 Paul LaRose, Jefferson City, Mo., for appellants.
 Robert N. Hamilton, St. Louis, Mo., for appellees.
 Before JOHN R. GIBSON, and MAGILL, Circuit Judges, BRIGHT, Senior Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Richard and Gregory Wright, brothers and former inmates at the Missouri Training Center for Men in Moberly, Missouri, were assaulted by other inmates on July 18, 1987. Based upon that assault, the Wright brothers brought this action under 42 U.S.C. Sec. 1983 (1982), against persons employed at the Center. Gregory Wright claimed that guards at the Center violated his constitutional rights by failing to prevent the fight or to intervene quickly. Richard Wright claimed that his constitutional right to medical assistance was violated when prison officials failed to convey his requests for medical attention to the prison's medical staff. With the consent of the parties, the case was tried before a magistrate.[1] The magistrate entered a directed verdict against Richard Wright, but a jury awarded Gregory Wright actual and punitive damages from four guards.[2] The guards appeal, arguing that the magistrate should have granted them a directed verdict or a judgment notwithstanding the verdict. They also argue that both the verdict-directing jury instruction and the punitive damages instruction contained incorrect legal standards. Specifically, they argue that the jury should have been instructed that: (1) it could award compensatory damages only if Gregory Wright satisfied the test of Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); and (2) it could assess punitive damages only if the guards willfully, wantonly, or maliciously disregarded Gregory Wright's constitutional rights. Richard Wright also appeals, arguing that the magistrate erred by directing a verdict against him. We affirm the magistrate's judgment in all respects.
 
 
 2
 The record contains evidence that during the afternoon of July 18, 1987, an unusually large number of inmates congregated in the prison housing unit where the Wrights were incarcerated. The groups were noisy, and many fights took place. There was testimony that the crowds were particularly large during the period between 4:00 p.m., when appellants Wegs, Rucker, Mills, and Yagel reported for duty, and 4:45 p.m., when the Wright brothers were involved in a fight. Several witnesses also testified that just before the prisoners were counted at 4:30 p.m., a fight broke out which lasted five minutes and which finally broke up, without the intervention of guards, only when the combatants became exhausted. At approximately 4:45 p.m., Gregory Wright was assaulted and severely beaten for five minutes before guards entered the housing unit to stop the fight. There was also testimony that the guards' behavior during this incident was unusual, because guards at the Center usually took steps to disperse large groups of inmates by coming into the housing unit and patrolling.
 
 
 3
 At the conclusion of the trial, the jurors were instructed that they should find the defendants liable if they found by a preponderance of the evidence that the defendants knew of conditions making it highly foreseeable that some of the inmates, including Gregory Wright, might be attacked; that the defendants failed to protect Gregory Wright from the attack; that the defendants' conduct constituted cruel and unusual punishment because they recklessly disregarded Gregory Wright's right to be free from attack by other inmates; and that Gregory Wright was injured as a result of the defendants' conduct. The jury found for Gregory Wright and awarded actual damages of $1,000 against the four guards jointly and severally, and punitive damages of $225 against each of the four.
 
 I.
 
 4
 The guards argue that the magistrate should have granted their motions for a directed verdict or a judgment notwithstanding the verdict. These contentions are unpersuasive. We have set forth in some detail above the facts, which we have recited in a light most favorable to Gregory Wright, as we must when we consider the submissibility of his claim. See Morgan v. Arkansas Gazette, 897 F.2d 945, 948-49 (8th Cir.1990) (standard for judgment notwithstanding the verdict); Williams-El v. Johnson, 872 F.2d 224, 228 (8th Cir.) (standard for directed verdicts), cert. denied, --- U.S. ----, 110 S.Ct. 85, 107 L.Ed.2d 51 (1989). It is apparent that there had been considerable unrest in the Wrights' housing unit during the afternoon when the Wrights were injured. The guards argue that they had no notice that a fight was likely to occur that afternoon, because they were not told that fights had taken place before they came on duty at 4:00 p.m., and because no one fought between 4:00 p.m. and 4:45 p.m. This was a question for the jury, since there was abundant evidence, including an investigative report prepared by prison officials, indicating that at least one fight took place between 4:00 p.m. and 4:30 p.m. in a hall that was plainly visible from the rotunda where the guards were stationed. (Tr. I at 21-25; II at 128-31; Guards' App. at 45). There was testimony that Wegs, Rucker, Mills, and Yagel were in the rotunda after 4:00 p.m., even though at least one of them had left the rotunda to eat when the Wright brothers were injured. (Tr. II at 105, 112, 210-12). The evidence indicated that Wegs had a duty to patrol the wing and perform the count, and Mills stated that the guards had a duty to supervise the inmates. There was testimony that the guards had a clear view of the unrest in the wing, and photographs were introduced showing the view from the rotunda into the wing area. With this evidence, Gregory Wright established a submissible failure-to-protect claim under the "reckless disregard" standard set forth by this court in Vosberg v. Solem, 845 F.2d 763, 765-66 (8th Cir.), cert. denied, 488 U.S. 928, 109 S.Ct. 313, 102 L.Ed.2d 332 (1988); Thomas v. Booker, 784 F.2d 299, 303 (8th Cir.) (en banc), cert. denied, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986); and Martin v. White, 742 F.2d 469, 474 (8th Cir.1984).
 
 II.
 
 5
 The guards attack the verdict-directing instruction in two ways. First, they argue that the instruction should have required a finding that the guards engaged in willful, wanton, or malicious conduct. Second, even if liability can be imposed for reckless disregard of an inmate's right to be free from attack, the guards argue that the instruction in this case improperly established a gross negligence standard. We are not convinced by either argument.
 
 
 6
 Citing Dudley v. Stubbs, --- U.S. ----, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989) (O'Connor, J., joined by Rehnquist, C.J., and Kennedy, J., dissenting from denial of petition for writ of certiorari); and Whitley, 475 U.S. 312, 106 S.Ct. 1078, the guards argue that they cannot be held liable for recklessly disregarding the safety of inmates. This argument is untenable. We established the reckless disregard standard as an elaboration of the doctrine that guards can be liable for "deliberate indifference" to the welfare of inmates. See Martin, 742 F.2d at 474. In Whitley, an inmate claimed that prison officials had used excessive force to restore order after a guard had been taken hostage during a prison riot. Whitley, 475 U.S. at 314-18, 106 S.Ct. at 1081-83. The Supreme Court held that the prison officials should not be liable for mere deliberate indifference in that case because their use of force resulted from a necessary compromise between their "competing obligations." Id. at 318-22, 106 S.Ct. at 1083-85. The Court held that, in cases such as Whitley, prison officials should be held liable only if they acted "maliciously and sadistically." Id. at 320-21, 106 S.Ct. at 1085.
 
 
 7
 It is not appropriate to apply the Whitley standard in this case, because the guards have not identified a competing obligation which inhibited their efforts to protect inmates. See Berry v. City of Muskogee, 900 F.2d 1489, 1494-95 (10th Cir.1990) (reaching a similar conclusion). Thus, the guards can be held liable under the deliberate indifference, or reckless disregard, test because liability "can ... be established or disproved without the necessity of balancing competing institutional concerns for the safety of prison staff or other inmates." Whitley, 475 U.S. at 320, 106 S.Ct. at 1084. Moreover, although the guards objected to the verdict-directing instruction at trial, they did not argue that the instruction should contain the Whitley test. See Fed.R.Civ.P. 51. Therefore, we review the instruction only for plain error. Phenix Fed. Sav. & Loan Ass'n v. Shearson Loeb Rhoades, 856 F.2d 1125, 1130 (8th Cir.1988), cert. denied sub nom. --- U.S. ----, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989). Here, even if the guards had complied with Rule 51, we would be unpersuaded by their argument, since the verdict-directing instruction accurately stated the law.
 
 
 8
 The guards also argue that the verdict-directing instruction allowed the jury to find the guards liable for mere negligence or gross negligence, because it contained the words "highly foreseeable." We believe that the guards have attempted to dissect the instruction too finely. When the phrase "highly foreseeable" is viewed in the context of the instruction as a whole, it is apparent that the challenged part of the instruction required that the guards have notice of the danger.[3] That instruction is not erreoneous. Under our precedents, liability can be imposed if guards disregard a known risk to the safety of inmates. See Vosberg, 845 F.2d at 765-66; Thomas, 784 F.2d at 303; Martin, 742 F.2d at 474. Furthermore, the jury was required to find that the guards' failure to act was in reckless disregard of Gregory Wright's right to be free from attack. We do not believe that the reckless disregard standard was diluted by the inclusion of the phrase "knew ... [that it was] highly foreseeable" earlier in the instruction, and the use of both phrases in the instruction did not create a vagueness that needed further definition.
 
 III.
 
 9
 The guards argue that the punitive damages instruction did not establish the proper legal standard. The jury was instructed that it could award punitive damages if it found that the defendants acted in "reckless or callous disregard of, or indifference to, the rights or safety of others."[4] The guards had submitted an instruction requiring a finding that the injury or damage to the plaintiff was "maliciously, or wantonly, or oppressively done," with "wantonly" defined as "in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the injured person." (Guards' App. at 52).
 
 
 10
 We reject the guards' argument for two reasons. First, it is apparent that the instruction offered by the guards defined the phrase "wantonly" by using the same language that was used in the instruction that is challenged. Second, the Supreme Court explicitly held in Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), that a jury may assess punitive damages if a "defendant's conduct ... involves reckless or callous indifference to the federally protected rights of others." Id. at 56, 103 S.Ct. at 1640. The guards argue that after Memphis Community School Dist. v. Stachura, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), punitive damages can be imposed only for "willful or malicious conduct." Id. at 306 n. 9, 106 S.Ct. at 2542 n. 9. The quoted language from Stachura is dicta, and we do not believe that it modifies the explicit holding of Smith.
 
 IV.
 
 11
 Richard Wright appeals and argues that the magistrate erred in directing a verdict in favor of defendants Jones, Gammon, and Thornburg. In his claim, Richard Wright argued that the prison had not instituted sufficient procedures to guarantee that medical requests were transmitted to the prison's medical staff from inmates who were in protective custody. There was evidence indicating both that the prison had established rules or policies to ensure that medical requests were forwarded from protective custody, (Tr. I at 145; II at 9-10), and that the requests were in fact communicated on several occasions, (Tr. II at 178-79, 184). Furthermore, our study of the record reveals no evidence that Jones, Gammon, or Thornburg either knew of the alleged problem or were personally involved in withholding medical attention.
 
 
 12
 We affirm the judgment of the magistrate in all respects.
 
 
 
 [1]
 The Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri
 
 
 [2]
 The magistrate entered a directed verdict in favor of several defendants who had not been on duty as guards when the fight occurred
 
 
 [3]
 The jury was instructed that:
 Your verdict must be in favor of each plaintiff who has proven by a preponderance of the evidence the following facts:
 First, On July 18, 1987, defendants Lawrence Wegs, Lt. Yagel, R.L. Rucker, and Lawrence Mills, or any of the defendants knew that conditions existed that made it highly foreseeable that some inmates, including the plaintiff, would be physically attacked and seriously injured; and
 Second, any said defendant failed to protect plaintiff from attack from other inmates; and
 Third, said failure to act occurred with reckless disregard for plaintiff's right to be free from attack by other inmates and thereby violated the constitutional right to be free from cruel and unusual punishment; and
 Fourth, as a direct result of such conduct, plaintiff was injured.
 (Guards' App. at 54) (emphasis added).
 
 
 [4]
 The entire instruction reads as follows:
 In addition to actual damages, the law permits the jury, under certain circumstances, to award the injured person punitive and exemplary damages, in order to punish the wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct.
 If you find the issues in favor of the plaintiff, and if the conduct of one or more of the defendants is shown to be a reckless or callous disregard of, or indifference to, the rights or safety of others, then you may assess punitive or exemplary damages in addition to any award of actual damages.
 The amount of punitive or exemplary damages assessed against any defendant may be such sum as you believe will serve to punish that defendant and to deter him and others from like conduct.
 (Guards' App. at 51).